## UNITED STATES v. DeMARY.

### No. 283–F.

United States District Court
N. D. West Virginia,
Fairmont Division.

June 6, 1952.

Albert F. Shulman, Enforcement Atty., Cleveland, Ohio, for plaintiff.

M. Earle Morgan and John L. McIntire, Fairmont, W. Va., for defendant.

WATKINS, District Judge.

This action is brought under Sections 205 and 206(b) of the Housing and Rent Act of 1947, as amended, 50 U.S.C.A. Appendix, §§ 1895, 1896(b). The Expediter asks restitution in behalf of the tenant of alleged rent overcharges, in the amount of $3,750, statutory damages in the amount of double the overcharge amounting to $2,250, and for an injunction to restrain further violations. The case was tried by the court without a jury.

The question presented is whether this building was a "housing accomodation", thereby subject to rent control, or whether it was rented to be used for business purposes and not subject to rent control. There is much conflict in the evidence, making the case one in which the court is required to decide the weight and credibility of the evidence. After observing the witnesses testify, considering their interest in the outcome of the case, their demeanor on the witness stand, and after making an inspection of the premises in the presence of counsel and observing the size, location and arrangement of the various rooms, I make the following findings of fact and conclusions of law:

### Findings of Fact.

1. On December 30, 1942, the Conservative Life Insurance Company was the owner of a 13-room (two-story with attic) brick dwelling located at 1012 Locust Ave., Fairmont, W. Va., on which date it registered this property as a housing accommodation, the maximum rent when rented as a housing accomodation being $55 per month.

2. About January, 1947, the defendant purchased this property from the insurance company, and on the 17th day of May, 1948, leased the same to Rose Phillips. The written lease is filed as an exhibit by the plaintiff.

3. Rose Phillips was competent and experienced in the restaurant business.

From 1939 to 1943 she had conducted a restaurant or tea room in this same building, and had rented some of the rooms to students. In 1943 she moved her restaurant business to Gaston Avenue into a much larger structure, where she also rented some rooms. She found this building to be too large for her business, and decided to return to the Locust Avenue location.

4. At the time the defendant leased the premises to Rose Phillips, it was the mutual intention and contemplation of the parties that the premises were to be used by the tenant for business purposes, more particularly, for the tenant to conduct a restaurant business. In the written lease signed by the tenant, she promised to use the building for business purposes, the lease providing:

"Said building is to be used by the said lessee as a place of business for the conduct of a restaurant and attendant uses in connection therewith."

The lease was for the period of June 1, 1948 to May 1, 1951, at a fixed rental of $180 per month.

5. The tenant paid the rent as agreed until October, 1950, when she paid only $50 for that month and paid no rent for any month thereafter. In November, 1950, the tenant became seriously ill and was taken to the hospital. All her furniture was left on the premises and on December 4, 1950, she notified the landlord that she was turning the premises over to him. The defendant has been unable to rent the premises to any other tenant, and they are still unrented at this time.

6. About June 1, 1948, the tenant took possession of the remainder of the premises. She engaged in the restaurant or tea room business in a part of the building, a sign being placed in the front yard stating "Phillips Restaurant—Home Cooking. Tourists Welcome." She also rented sleeping rooms to students and others.

7. She used all of the first floor of the building in her restaurant business or for purposes incident thereto. She used the basement of the building (except a small room about 12 feet long and 12 feet wide which was reserved by the landlord for tools, etc.) as was necessary to store supplies and other purposes incident to the restaurant business. The basement was 40 feet by 42 feet, the same size as the floor space on the first floor. Adjoining the basement there was an additional room with cement floor (size 30 feet by 8 feet), located under the back porch. This room was enclosed with lattice work and it was used for the same purpose. It was necessary to use the basement to store food and supplies for the restaurant business because the pantry space on the first floor was not adequate for storage purposes for a restaurant. The plaintiff engaged in an extensive restaurant business, many of her patrons following her to this location from Gaston Avenue where she engaged in a similar business. Furthermore, the restaurant was located only about one-half block from the entrance to Fairmont State College, where there were about 600 students enrolled during the regular school term and about 250 enrolled during the summer term. Many of these students patronized the restaurant, as did other people in the city. On many occasions she would have special parties of 50 to 80 persons for a meal, in addition to her regular customers, and on one occasion she had over 100 guests for a wedding reception. In addition to the first floor the patrons would also use the front and rear porches. At times when the first floor was crowded patrons were served at a table on the rear porch. The only toilet facilities available to her restaurant patrons was located on the second floor. When she had a party of 50 or more persons, they all shared the single toilet on the second floor with the roomers on that floor. There was no cloak room on the first floor, and when there was a large party, she had her restaurant patrons deposit their hats and coats in one of the six bedrooms on the second floor. The remaining bedrooms were rented out to roomers. The floor space on the second floor was the same as that on the first floor. In the attic or third floor there was one large bedroom which was rented to students when she was able to rent same. Because of the heat in the attic, the

students did not like it up there, and she found it difficult to rent, the students desiring to move to the second floor where it was more accessible, more private and more pleasant. There was a toilet and shower bath in the attic. The attic was 30 by 42-½ feet. It is smaller than the second floor because of dormer windows.

8. The Office of Rent Stabilization has adopted official interpretations of the Rent Regulations (16 F.R. 7631) dealing with "Combined Business and Dwelling Uses", where business and dwelling portions of a building are rented to a single tenant. These interpretations deal with the situation where the business and dwelling portions of the building are separable, and where they are not separable. Here both parties agree that the business and dwelling portions of this building are not separable, so we are only concerned with the interpretations relating to non-separable portions of the same structure.

9. Paragraph 2(a) provides that

"Where the business and dwelling portions are rented to a single tenant, but are not separable, then both portions have a single status determined in accordance with the following rules: (1) If a predominant part of the total space is used for business purposes, the property is not subject to the regulations. (2) Where less than a predominant part of the total space is used for business purposes (and also where the space test cannot be used because there is no physical segregation of the space used for business purposes and that used for dwelling purposes) but the rental value of the business portion (or of the business use where the two uses are not physically segregated) is clearly in excess of the rental value of the dwelling portion, the property is still not subject to the regulations. (3) If less than a predominant part of the total space is used for business purposes, and the rental value of the business portion (or business use) does not clearly exceed the rental value of the dwelling portion (or

dwelling uses), the entire property is subject to the regulations."

10. Under the facts in this case the predominant part of the total space of this building was used for business purposes, and the property was therefore not subject to the rent regulations. In addition thereto, I find that the rental value of the business portion or of the business use where the two uses are not physically segregated, as in this case, is clearly in excess of the rental value of the dwelling portion. The rental value of the business portion of this building or of the business use was at least 75% of the total rental value of the whole building.

11. This building is not a "housing accommodation" within the meaning of the Housing and Rent Act of 1947, as amended, and the Regulations and interpretations issued and adopted thereunder. During the occupancy of the tenant under this lease the building was not subject to rent control.

12. The defendant did not know that the tenant was using the premises for other than business purposes, in violation of the agreement of lease. The tenant did not tell the defendant or make known to him that she intended to or did use such premises for living accommodations. The premises were rented by the defendant in good faith for business purposes.

### Conclusions of Law.

1. The Act involved in this proceeding is the Housing and Rent Act of 1947, as amended, 50 U.S.C.A.Appendix, § 1881, et seq., which became effective June 30, 1947. This court has jurisdiction of the subject matter of this action.

2. The official interpretations adopted by the Office of Rent Stabilization are controlling in this case and should not be ignored unless plainly erroneous. Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700; Woods v. Macken, 4 Cir., 178 F.2d 510, 513. I do not find them erroneous, and, therefore, they must be followed in this case.

3. The defendant did not violate the Housing and Rent Act of 1947 as amended and the controlled Housing Rent Regu-

lations issued pursuant thereto by demanding and receiving rents in excess of the maximum rents provided by the Regulation as alleged in the complaint. The building was not subject to rent control.

4. Since there were no overcharges of rent, the plaintiff is not entitled to have any restitution made to the tenant. Likewise plaintiff is not entitled to double damages for restitution, and is not entitled to the injunction asked.

An order may be entered accordingly.