SCHOOL COMMITTEE OF BOSTON & another *vs.* BOARD OF
EDUCATION.

Suffolk. February 8, 1973. — February 15, 1973.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, HENNESSEY,
KAPLAN, & WILKINS, JJ.

*Racial Imbalance Law. Education. School and School Committee.
Administrative Agency. Constitutional Law,* Separation of pow-
ers. *Jurisdiction,* Justiciable question, Administrative agency.
*Words,* "Judicial review."

G. L. c. 15, § 1J, providing for "judicial review" of recommendations
designed to eliminate racial imbalance in public schools submitted
to a school committee by the State board of education which the
committee has declined to accept, or of the board's disapproval
of a revised plan submitted to it by a school committee, does not
contemplate that the court should conduct a trial de novo, but calls
for a judicial review of the board's determinations based only on
the record developed in a board hearing; if the court finds that
the board's determinations are supported by substantial evidence,
the court must uphold action taken by the board unless it violates
the racial imbalance law. [128–130]

No provision of G. L. c. 71, §§ 37C, 37D, and c. 15, §§ 1I-1K, pre-
vents a school committee and the State board of education from
developing partial plans as a way of expediting the reduction of
racial imbalance in the public schools while the parties continue
to work on an overall solution. [131]

BILL IN EQUITY filed in the Superior Court on October
26, 1971.

The suit was heard by *Robert Sullivan,* J.

Following appeal from an order entered December 18,
1972, and filing of a report of material facts by the trial
judge pursuant to an order by the Supreme Judicial
Court on December 28, 1972, the case was further argued.

*Walter H. Mayo, III,* Assistant Attorney General
(*Andrew M. Wolfe,* Assistant Attorney General, with
him) for the Board of Education.

*James D. St. Clair (Stephen H. Oleskey* with him) for
the School Committee of Boston & another.

REARDON, J.   We return to another facet of this perplexing case in the hope that this opinion will serve as a vehicle for action by the parties so that the school children of the city of Boston, the principal sufferers from the controversy, may find prompt and effective relief from the tensions and dislocations to which they have been subjected.

Reference may be had to our opinion released on February 2, 1973, for the statement of the factual background of the case.   We supplement that statement with the following.

The school committee of the city of Boston (committee) and the board of education of the Commonwealth (board) took certain actions pursuant to the "interlocutory decree" entered by the trial judge on September 27, 1972.   On October 6, 1972, the board made recommendations for a short-term plan to satisfy the racial imbalance law by redistricting Boston schools at all levels.   In turn the committee filed with the board on November 6, 1972, a "Short Range Plan Toward Elimination of Racial Imbalance in the Boston Public Schools 1972–1973."   The board rejected this plan on November 9, 1972, and on November 16, 1972, formally adopted its own plan which was submitted to the committee on the same day.   On that day both the board and the committee were ordered by the trial judge on his own motion to appear before him on November 17, 1972, for a judicial hearing to review the board's plan.   This hearing consumed eight days and was completed on November 30, 1972.

The board presented two witnesses, Dr. Gregory Anrig, chairman of the board's task force on racial imbalance, and Dr. John A. Finger, Jr., who served as special consultant to the board's task force for the formulation of the board's plan.   Both witnesses outlined the nature of the plan and the considerations on which it was based.

John Coakley, associate director of the educational planning center of the Boston school department, testified for the committee, and criticised several of the plan's

proposed school districts from the standpoint of size and safety.

On November 30, 1972, the committee, meeting at the request of the judge, voted to oppose the board's plan.

On December 18, 1972, the judge entered an order holding the board's plan in violation of the provisions of the racial imbalance law. The judge found that the board had proposed some districts which were "too large," and were "gerrymandered," and that there had been a failure to consider the concept of "neighborhood" in the construction of its plan, and that as a result excessive busing would be required. The judge also concluded that the plan did not take safety into account on an equal basis with the aim of achieving racial balance, included material not proper for a racial balance plan, and did not provide for the public hearings required by c. 71, § 37D, as amended through St. 1971, c. 958. He directed that measures be taken designed to produce a new time schedule for the development of a new plan. The board appealed from the order and, following other proceedings, the full court on December 28, 1972, on motion of the board, stayed all proceedings below and ordered the trial judge to file a report of material facts "including a detailed analysis as to precisely how the plan submitted by the board is violative of the racial imbalance law." All papers in the case were transmitted to this court by its order, which also provided for the filing of briefs and the argument which we have heard.

The judge filed an elaborate and detailed "Report of Material Facts," which consists of a district-by-district analysis of the plan, including estimation of maximum distances within each district, enumeration of the neighborhoods in each, and identification of the safety hazards.

The racial imbalance statute requires each school committee of the Commonwealth to take a racial census of its student population each year. Upon receiving this data, the board must notify each committee whose schools are racially imbalanced, and each committee is then required

to file a plan to eliminate such imbalance. G. L. c. 71, § 37D. The board is to furnish technical assistance in the formulation and execution of such plans. If, after a committee submits its plan, the board determines that it does not meet the statutory standards, the board is required to make specific recommendations to the committee for a plan to eliminate imbalance. The committee would then submit a revised plan to the board. G. L. c. 15, § 1I.

The statute also provides for "judicial review," on a bill of a committee, in either the Superior Court for the county in which it is located or in the Supreme Judicial Court for Suffolk county in two situations: (1) after the committee declines to accept the recommendations submitted to it by the board, or (2) after the board disapproves a revised plan submitted to it by a school committee. As a result of a judicial review the court is either to affirm the board's determination of the recommendations or its disapproval of the committee's revised plan and order the board's recommendations enforced, or, if it finds the board's determination to be in excess of its statutory authority, based upon an error of law, arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law, it may set aside the determination and remand the matter to the board. G. L. c. 15, § 1J.

Traditionally, this sort of judicial review of an administrative determination takes place on the basis of an administrative record. The proper function of the court is not to engage in complex fact determinations more appropriately committed to an agency, with staff and skilled experience to make them. Rather, the court must accept the factual determinations made by the agency if it finds they are supported by substantial evidence, and decide only questions of law. See *Duato* v. *Commissioner of Pub. Welfare,* 359 Mass. 635, 639.

General Laws c. 15, § 1J, does not explicitly require a hearing before the board, nor does it elaborate on the nature of the "judicial review" which is to take place. We do not believe, however, that when the statute speci-

fies that the court may set aside the determinations by the board if they are " (a) in excess of the statutory authority or jurisdiction of the board, or (b) based upon an error of law, or (c) arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law," that it contemplates the court's conducting a trial de novo on the factual basis of the board's action. The situation is singular, but in our view "judicial review" in this context must give proper weight to the experience and technical capabilities of the agency charged with the ultimate responsibility for the enforcement of the racial imbalance law. Therefore, we conclude that the court's review of the determinations made by the board must be based on the evidence the board had before it when it made its decisions. If the court finds that, as a factual matter, determinations of the board are supported by substantial evidence (even if there is evidence to the contrary), it must uphold the board's action unless as matter of law it violated the statute.[1]

The judge in this case felt that he was faced with the task of reviewing the board's determinations in the absence of any administrative record. However, we are of the opinion that this deficiency would have been more appropriately cured by remanding the matter for a hearing conducted by the board. The trial judge's report of material facts itself vividly demonstrates the involvement of the court in fact-finding which, as matter of practicality and of policy, is better left to the board. It is more than a massive distillation of eight days of trial testimony. For example, on questions which the trial judge felt were inadequately explored by the witnesses at the hearing, or on which there was sharp conflicting testimony, he felt impelled to make an independent factual assessment, relying on his own judgment as to the necessity for busing and the hazards of particular routes or areas. Moreover, the judge was not simply independ-

[1] In reviewing the rejection by the board of a school committee plan, the court should act within the guidelines set forth in *School Comm. of Springfield* v. *Board of Educ.* 362 Mass. 417, 441–442.

ently assessing the data before the board; at least to some extent he was hearing new evidence which had never been considered by the board since the committee's principal witness had never testified there.

We therefore conclude that in those situations in which the statute contemplates "judicial review" of the board's actions, namely, after the committee has rejected the board's recommendations, or after the board has rejected the committee's revised plan, the court may proceed to judicial review only on the basis of a record developed in a board hearing.

In our view, therefore, the case should be remanded to the board for hearings.[2]  Those hearings may deal with the board's plan as presently formulated, or the board may see fit, since more current and specific data are apparently now available, to create a new revised plan. The hearings should also consider the board's rejection of the committee's revised plan (a) by establishing the basis of the board's determination that the plan did not satisfy G. L. c. 71, § 37D, and (b) by establishing the basis of any decision of the board that the committee's factual determinations were not themselves supported by substantial evidence.  See *School Comm. of Springfield* v. *Board of Educ.* 362 Mass. 417, 441.  Those hearings shall begin no later than March 19, 1973.  (We note that we see no reason why the committee should not take advantage of this period to submit a new revised plan if it sees fit.)

Following the completion of hearings, which should be conducted as expeditiously as possible, if the committee files a bill for review of action adverse to it, or if the board seeks enforcement of its recommended plan, the court may proceed to review the board's determination on the basis of the record of the hearing.[3]

[2] General Laws c. 30A, § 11, though not directly applicable, may serve in whole or in part as a guide.

[3] In view of the time pressures inherent in the situation, and the potential significance of the issues, it is appropriate that further judicial proceedings, if required, be held before a single justice of the Supreme Judicial Court.

We point out that basic to the determination of what is before us is the fact that no court, based on considerations both of law and of practicality, can be expected to assume and carry out the duties of agency administration. It is perfectly apparent that the impasse created by a law difficult to administer under the happiest of circumstances has been exacerbated by personality clashes between State and city personnel with the result that the school children of Boston, innocent bystanders in what has gone on, have all been disadvantaged, irrespective of their color. No sound reason exists why the current situation should continue interminably, and every good reason exists why the measure of coöperation which citizens have the right to expect from State and city agencies working in the same field should be forthcoming now. It has been clear from our review of the evidence in two lengthy hearings which have been held in the Superior Court that communication between the board and the committee has been faulty at most points and non-existent at some. In our view, substantial resolution of the complex problems in this litigation is possible through the coöperative efforts of the board and the committee, and responsibility for the smooth and speedy implementation of the racial imbalance law lies with both of them. In this regard we note that while the complexity of working out a comprehensive solution to the problem of racial imbalance is considerable, the evidence suggested that certain partial solutions, involving either particular grade levels or particular geographical areas, may be easier to reach. We find nothing in the statute to prevent the parties from developing partial plans as a way of expediting the reduction of racial imbalance while they continue to work on an overall solution.

At oral argument, counsel for the committee raised the issue of the board's withholding of funds due the committee during 1973, and requested that this court order those funds released. We are of opinion that this question is not properly presented by the record before us and we therefore decline to rule on it.

Accordingly, in the light of what has been presented to us and in the posture of the case as it now stands, it is ordered as follows: (1) The case is remanded from the full court to the county court wherein all further judicial proceedings in this case shall be initiated: (2) The single justice is to vacate the "interlocutory decree" entered on September 27, 1972, the order of December 18, 1972, and the findings and rulings contained in the report of material facts; and the single justice is to remand the matter to the board for proceedings consistent with this opinion.

*So ordered.*