## OPINION OF THE JUSTICES TO THE LIEUTENANT GOVERNOR.

*Education.    School and School Committee.    Constitutional Law,* Equal protection of laws, Assignment of school children. *Boston.*

Proposed legislation, providing that if a majority of the votes cast at a special municipal election to be held in Boston in June, 1974, answer in the negative the proposed question on the ballot "Shall Boston public school children be assigned to a particular Boston public school on the basis of race . . . without the consent of his parent or legal guardian?", then the Boston school committee shall be barred from assigning children to schools on the basis of race without such consent, "notwithstanding any contrary provision of law," would ensure, upon a negative vote, the perpetuation of existing racial

imbalance in Boston's schools, and would violate the equal protection clause of the Fourteenth Amendment to the Constitution of the United States and arts. 1 and 10 of the Declaration of Rights of the Massachusetts Constitution. [651-654]

No constitutional bar precludes placing on the ballot at a special municipal election to be held in Boston in June, 1974, for an "advisory," nonbinding opinion, the question "Shall Boston public school children be assigned to a particular Boston public school on the basis of race . . . without the consent of his parent or legal guardian?" [654]

On April 16, 1974, the Justices submitted the following answers to questions propounded to them by the Lieutenant Governor, Acting Governor.

To His Honor, the Lieutenant Governor of the Commonwealth:

The Justices of the Supreme Judicial Court respectfully submit these answers to questions contained in the request of the Lieutenant Governor,[1] dated April 8, 1974, for an advisory opinion relating to a bill, House No. 5495, pending before him. A copy of the bill was transmitted with the request. The bill is entitled, "An Act placing the issue of public school pupil reassignment on the ballot of the special election to be held in the city of Boston in June of this year." In the request the Lieutenant Governor states that he has grave doubt as to the constitutionality of certain provisions of the bill.

The first section of the bill is in five paragraphs, and, in outline, contains the following provisions. The first paragraph provides that, on fulfilment of stated procedural requirements, a certain question shall be placed on the ballot for a special municipal election to be held in Boston in June of 1974. The second paragraph contains the text of

---

[1] The Massachusetts Constitution expressly permits only the branches of the Legislature, the Council, or the Governor to require the opinions of the Justices. Part II, c. 3, art. 2 (as amended by art. 85 of the Amendments). The Lieutenant Governor submitted this request as "Acting Governor." When "the chair of the governor shall be vacant," the Lieutenant Governor, during the vacancy, shall exercise all the powers of the Governor. Part II, c. 2, § 2, art. 3.

the question to be placed on the ballot: "Shall Boston public school children be assigned to a particular Boston public school on the basis of race, sex or creed without the consent of his parent or legal guardian?" The third paragraph[2] provides that, in the event that a majority of the voters cast "No" votes in answer to the above question, the Boston school committee shall be barred from assigning children to schools on the basis of race, sex or creed without parental consent, "notwithstanding any contrary provision of law." The fourth paragraph contains a procedural provision not here relevant. The fifth paragraph[3] provides that, "[n]otwithstanding any contrary provisions of law," no school assignment by the school committee of Boston shall take effect until the results of the vote on the question in the second paragraph have been ascertained. Section two of the bill provides that "[t]his act shall take effect upon its passage."

The questions are:

"1. Would the enactment of the third and fifth paragraphs of section one of House No. 5495 be in violation of the Fourteenth Amendment to the Constitution of the United States guaranteeing the equal protection of the laws?

"2. Would the enactment of the third and fifth paragraphs of section one of House No. 5495 be in violation of Article I of Part the First of the Constitution of the Commonwealth asserting the equality of its persons and their possession of certain unalienable rights?

---

[2] The full text of the third paragraph is: "If a majority of the votes cast in answer to said question is in the negative, the school committee of the city of Boston shall not assign a public school child to a particular Boston school on the basis of race, sex or creed without the consent of his parent or legal guardian, notwithstanding any contrary provision of law."

[3] The full text of the fifth paragraph is: "Notwithstanding any contrary provisions of law, no assignment of a public school pupil to a particular public school within the city of Boston by the school committee of said city shall take effect until the results of the vote as provided for in section one is ascertained."

"3. Would the enactment of the third and fifth paragraphs of section one of House No. 5495 be in violation of Article X of Part the First of the Constitution of the Commonwealth guaranteeing the equal protection of the law?

"4. Would the enactment of the third and fifth paragraphs of section one of House No. 5495 be in violation of Article V or Article X of Part the First of the Constitution of the Commonwealth in that it delegates to certain private individuals legislative powers required to be exercised by the General Court on behalf of all the people of the Commonwealth from whom such powers derive?

"5. If the answer to any of the foregoing four questions is in the affirmative, would the holding of a wholly advisory election, for the purpose of ascertaining the will of the community, pursuant to House No. 5495, be in violation of Article LXXXIX of the Amendments to the Constitution of the Commonwealth?"

Less than one year ago, in response to another request from the Executive Branch, we expressed our opinion that a bill which purported to bar the transportation without parental consent of schoolchildren to or from any public school would violate the Fourteenth Amendment to the Constitution of the United States and arts. 1 and 10 of the Declaration of Rights of the Massachusetts Constitution. *Opinion of the Justices*, 363 Mass. 899 (1973). We believe that the present bill suffers from the same constitutional infirmities.

The bill now before us and the bill considered in the earlier *Opinion of the Justices*[4] are, of course, not identical. For example, the present bill originated as a home rule

---

[4] We noted that the earlier bill provided in part that "[n]otwithstanding any law to the contrary, no child attending public school shall be transported to or from any public school without the prior written consent of his parent or legal guardian. Each of such children shall be permitted to attend the school nearest

petition addressed to the Legislature by the city of Boston pursuant to art. 89 of the Amendments to the Constitution of Massachusetts. The operation of the provision proscribing school assignments on the basis of race, sex or creed contained in the third paragraph of the first section is conditioned on the results of a municipal election in Boston. The present bill would prohibit assignment, as opposed to transportation, of students without parental consent. For purposes of constitutional analysis, however, the similarities between the two bills are far more significant than the differences.

Both bills arose "in the context of . . . [the] continuing debate over the racial imbalance law [G. L. c. 15, §§ 1I-1K, and c. 71, §§ 37C, 37D]." *Opinion of the Justices,* 363 Mass. 899, 905 (1973). See *School Comm. of Boston* v. *Board of Educ.* 352 Mass. 693 (1967); *School Comm. of Springfield* v. *Board of Educ.* 362 Mass. 417 (1972); *School Comm. of Boston* v. *Board of Educ.* 363 Mass. 20 (1973); *School Comm. of Boston* v. *Board of Educ.* 363 Mass. 125 (1973); *School Comm. of Boston* v. *Board of Educ.* 364 Mass. 199 (1973). The present bill, like the earlier bill, "does far more than merely repeal sub silentio effective enforcement of the racial imbalance law. The Legislature did not proceed by removing some or all of the special duties and remedies created by the racial imbalance law, an action which would have left school committees with their traditional power to use busing and redistricting as appropriate to deal with the problem of racially segregated schools. See the *Springfield* case . . . [362 Mass. at 440-441 (1972)]." *Opinion of the Justices,* 363 Mass. at 905 (1973). Instead, by barring assignment of pupils on the basis of race, the bill would ensure the perpetuation of presently existing racial imbalance in Boston's schools. See *School Comm. of Boston* v. *Board of Educ.* 352 Mass. at 696 (1967); *School Comm. of Boston* v. *Board of Educ.* 363 Mass. at 23-

---

his residence within his city or town, which has a seat available in his grade, unless his attendance at another school has been requested by his parent or legal guardian." 363 Mass. at 900 (1973).

24, 27 (1973); *School Comm. of Boston* v. *Board of Educ.* 364 Mass. at 200-201 (1973). Although the present bill does not expressly require that children be sent to the schools closest to their homes, as did the earlier bill, it would just as effectively "tie school assignments to [Boston's] *racially segregated residential patterns*," *Opinion of the Justices*, 363 Mass. at 905-906 (1973) (emphasis in the original), by ensuring that no student will be initially assigned to a particular Boston school or transferred from his present school and reassigned to another Boston school for the purpose of achieving racial balance.

It is clear from the foregoing that, as a constitutional matter, the bill now before us is virtually indistinguishable from the bill we found to be unconstitutional in our earlier opinion.[5] Each "is unconstitutional on its face because it serves to perpetuate existing segregation in some of the schools, *regardless of its cause*, and thus, 'significantly encourage[s] and involve[s] the State' in racial discrimination." *Id.* at 902 (emphasis in the original), quoting from *Reitman* v. *Mulkey*, 387 U. S. 369, 381 (1967). By prohibiting the assignment, reassignment or transfer of a student in the Boston public schools "on the basis of race, sex or creed without the consent of his parent or legal guardian," the bill would forbid school authorities from using one of the important measures necessary to achieve a racially balanced system. "[I]f a state-imposed limitation on a school authority's discretion operates to inhibit or obstruct the operation of a unitary school system or impede the disestablishing of a dual school system, it must fall." *North Carolina State Bd. of Educ.* v. *Swann*, 402 U. S. 43, 45 (1971).

We therefore conclude that House No. 5495, if enacted, would violate the Fourteenth Amendment to the United States Constitution and arts. 1 and 10 of the Declaration of

[5] The fact that the prohibition of pupil assignments based on race will take effect only after a vote by the voters of Boston does not change the analysis. The State may not insulate its acts from constitutional scrutiny by interposing a referendum procedure. See *United States* v. *Scotland Neck Bd. of Educ.* 407 U. S. 484, 488-489 (1972).

Rights of the Massachusetts Constitution. *Opinion of the Justices,* 363 Mass. at 908-909 (1973). In light of these conclusions, we need not decide whether the bill might also violate art. 5 of the Declaration of Rights. *Ibid.*

There remains for discussion the fifth question submitted by the Lieutenant Governor, i.e., whether the holding of a purely "advisory," nonbinding election on the question in the second paragraph of House No. 5495 would violate the provisions of art. 89 of the Amendments to the Massachusetts Constitution (the Home Rule Amendment). In other words, would it be constitutionally impermissible for voters to express their approval or disapproval of an abstract proposition which, if enacted as law, would be unconstitutional? We perceive no constitutional bar to the taking of such an "opinion poll." The infirmity of House No. 5495 as it now stands is not that it permits a vote on the question of the assignment of public school students "on the basis of race, sex or creed," but rather that it would implement by State law the policy effectively prohibiting such assignments. If a proper petition by the mayor and city council were filed for the bill with the third and fifth paragraphs excised, and the bill were then enacted, the vote by the citizens of Boston would amount only to an expression of sentiment. There is certainly nothing in the Home Rule Amendment which would prohibit such an expression. The fifth question, however, speaks of holding an advisory election "pursuant to House No. 5495." Because that bill does contain the offending paragraphs, we must answer the fifth question in the affirmative.

We answer "Yes" to questions 1, 2, 3, and 5, and we beg to be excused from answering question 4.

G. Joseph Tauro
Paul C. Reardon
Francis J. Quirico
Robert Braucher
Edward F. Hennessey
Benjamin Kaplan
Herbert P. Wilkins