John E. Sherman vs. Rent Control Board of Brookline.

Norfolk. November 8, 1974. — February 12, 1975.

Present: Quirico, Braucher, Hennessey, Kaplan, & Wilkins, JJ.

*Rent Control. Municipal Corporations,* Rent control, Liability in tort. *Equity Jurisdiction,* Review of action of rent control board. *Administrative Board.*

Where a municipal rent control board denied a landlord a rent increase on the grounds of noncompliance of the property with certain laws and of substantial deterioration and failure of maintenance of the property, but indicated that otherwise it would have permitted an increase and where on appeal from the board's decision a Municipal Court judge awarded a rent increase in a smaller amount than that indicated by the board, a decree entered on appeal to the Superior Court awarding the landlord the larger rent increase indicated by the board as from the date of the Municipal Court decision was not justified and was reversed because the board had respected the Municipal Court decision awarding the smaller increase and had not thereafter been requested by the landlord to grant the larger increase and it did not appear that all of the grounds for the board's decision had been remedied. [3-6]

A decree of the Superior Court, entered on appeal to it under St. 1970, c. 842, § 10 (a), awarding damages to a landlord against a municipality for an "arbitrary and capricious" refusal of the municipality's rent control board to grant the landlord a rent increase was in error in that the municipality was not a party to the proceeding and that, if it had been a party, it would not have been liable under the statute or at common law for the board's action. [3-6]

On an appeal by a landlord to the Superior Court under St. 1970,
c. 842, § 10 (a), from a decision of a Municipal Court which
awarded the landlord a portion of a rent increase requested, after
the municipal rent control board had denied an increase, the court
was not authorized to conduct a de novo proceeding to determine
the validity of the requested increase taking evidence of matters
heard by the board and of events postdating the board's decision
but was only empowered to decide whether the board's decision
was supported by the facts before it and was legally justified. [3-
6]

Discussion of a rent adjustment proceeding before a rent control board
under St. 1970, c. 842. [7-11]

COMPLAINT filed in the Municipal Court of Brookline
on February 9, 1972.

On appeal to the Superior Court, the case was heard
by *Hallisey*, J.

After review was sought in the Appeals Court, the
Supreme Judicial Court, on its own initiative, ordered
direct appellate review.

*Judith E. Soltz* for Rent Control Board of Brookline.

*John E. Sherman*, pro se.

KAPLAN, J.   The Rent Control Board of Brookline
(Board) appeals from a decree of the Superior Court
which, upon a finding that the Board was "arbitrary and
capricious" in denying a landlord a certain rent increase,
awarded him damages of $3,500 against the town of
Brookline.

John E. Sherman, appellee on this appeal, is the owner
of buildings at 15-17 Aspinwall Avenue and 8-10 Homer
Street in Brookline, comprising sixteen apartments in all,
which are subject to rent control under St. 1970, c. 842,
as accepted by the town on September 29, 1970.[1]   In
September, 1971, Sherman applied to the Board for a
rent increase.   The Board held a hearing on December 9,
1971, at which Sherman appeared, and many of his
tenants in opposition.   Sherman's gross annual rental
income from the properties as of March 1, 1970, was

[1] The stated termination date of c. 842 was April 1, 1975 (see § 13),
but the statute was extended to the end of 1975 by St. 1974, c. 360.

$36,675.   He sought an increase to $44,640.   On January 18, 1972, the Board, without assigning reasons, denied Sherman any increase.   This is called in the record a "tentative" decision.

Upon being notified of the Board's decision, Sherman sought judicial review under c. 842, § 10 (a), by filing a complaint against the Board in the Municipal Court of Brookline in which he sought not only a rent increase but also damages against the Board, among other things for its "arbitrary and capricious actions."   While the case was pending, the Board on May 9, 1972, issued another decision, this one assigning reasons.   The Board found that if Sherman was to obtain in 1971 the same 10.6% return that he had earned in 1970, then, taking into account the items of 1971 expenses the Board would be prepared to allow, an increase in rents of $6,676 for the year would be necessary, to a total of $43,351.   But the Board denied any increase, referring, without particular specification, to "substantial deterioration of the housing units other than as a result of ordinary wear and tear," "failure to perform ordinary repair, replacement and maintenance," and "non-compliance with the State Sanitary Code, the Brookline Building Code, the Zoning By-Law."

Following this decision, the Municipal Court case proceeded, and on August 4, 1972, that court awarded Sherman a rent increase to $39,120, which was $4,231 less than the amount the Board had indicated it would have granted, had it not been for the factors above mentioned.

Sherman thereupon appealed to the Superior Court under § 10 (a), and on May 23, 1973, a hearing was held at which witnesses gave testimony and documents were introduced going into the case from its beginning, including the prior procedures, the basis for Sherman's claim that he was entitled to a further rent increase, and the basis for the Board's opposition including a consideration of its audit.   The judge made findings, rulings, and order for decree on June 1, 1973, entered a final decree on

July 2, 1973, and on August 17, 1973, filed his report of
material facts. Evidence at trial in the Superior Court is
reported. The judge found that, at the initial Decem-
ber 9, 1971, hearing before the Board, the tenants had
opposed the rent increase because of conditions in the
apartments, and that Sherman had failed on request to
produce his books and records to the Board so that an
audit could be made of his income and expenses in time
for the hearing. He also found that immediately before
the Board's second decision the Brookline health depart-
ment and Brookline building commission had inspected
the units at the request of the Board and had found
numerous sanitary and building code violations. In this
light, the judge held that "[t]he Board properly refused
an increase because of violations of various codes, ordi-
nances and by-laws." See c. 842, § 7 [b] [5] [6], [d].
However, the judge went on to "infer" from the Munici-
pal Court decision of August 4, 1972, that all code viola-
tions had been corrected by that time.[2] He ruled that
"[w]hen these violations terminated . . . the Board was
bound to establish rents which would yield . . .
[Sherman] a fair net operating income for such units.
The violations were corrected by . . . [August 4, 1972].
10.6 per cent is the lowest fair net operating income. . . .
[Sherman] should have been allowed rentals at the an-
nual rate of $43,351 after . . . [August 4, 1972]. . . .
The actions of the Board were arbitrary and capricious to
the extent that . . . [Sherman] was denied such a yield
for such periods.[3] . . . It will be impractical to attempt

[2] There was testimony that the violations were removed but the
date was left indefinite.

[3] The judge cited § 14 of the State Administrative Procedure Act,
G. L. c. 30A, which in subsection (8) (g) allows judicial setting aside
of agency action which is "arbitrary or capricious, an abuse of dis-
cretion, or otherwise not in accordance with law." Apart from the
fact that rent control boards are not "agencies" within the act, see the
discussion infra, § 14 (8) (g) does not speak to possible civil liability
of an agency or the government by reason of agency action.

to collect retroactive rent increases . . .. Since . . . [Sher-
man's] loss was caused by acts of town officials, the town
should reimburse . . . [Sherman]." The final decree
adjudged that "[t]he Town of Brookline is indebted to
. . . [Sherman] in the amount of $3,500.00 which amount
should be paid forthwith." (The amount had been stipu-
lated by the parties to be the damages from August 4,
1972, to July 1, 1973, if the court's view of the case was
correct.)

The decree was in error and will be reversed. Assum-
ing that the judge of the Superior Court in his review
was not in substance confined to the record before the
Board, and was at liberty to examine de novo the pro-
ceedings and facts from the beginning to the time of his
decree (an assumption discussed below), and assuming
further that he was right in thinking that Sherman was
entitled to the larger rent increase as from August 4,
1972, there was still no basis for holding that the Board's
inaction in failing then to grant that increase should
result in an award of damages for alleged arbitrary and
capricious conduct. The Municipal Court, after all, had
decided on the same day, August 4, 1972, that Sherman
was entitled to the lesser increase. It might be thought
that if anyone was then at fault, it was the court. The
Board respected the Municipal Court's judgment and did
not appeal it; rather it was the landlord who appealed as
was his right under c. 842, § 10 (a).[4] Furthermore, on
the record as it reaches us here, it remains unclear that
any larger rent increase was necessarily called for as of

---

[4] Sherman did not apply to the Board for a further increase after
the Municipal Court decision. Under c. 842, § 8 (a), a board may
consider an adjustment of rent on its own initiative, but on the other
hand § 8 (c) states that a board may, without a hearing, refuse to
adjust a rent level for an individual rental unit if a hearing for such
adjustment has been held with regard to the property within twelve
months — as was the case here.

It appears that Sherman did share in a general increase on some
date pending the appeal.

August 4, 1972.[5] It is, then, perhaps superfluous to add that the decree appealed from adjudges a liability of the town of Brookline to Sherman despite the fact that the town was not named as a party to the suit and did not appear.[6] Had the town been sued as a party, it could not rightly have been held responsible in damages for the Board's failure to raise the rents to a given level. Chapter 842 does not provide for civil liability of the Board or municipality, and the common law as it now stands[7] would not hold the town liable for the acts of its agents or of public officers where the circumstances and the degree of culpability that could be claimed were as pictured here. See *Bolster* v. *Lawrence,* 225 Mass. 387, 388-390 (1917); *Auger* v. *New Bedford,* 265 Mass. 327, 328 (1928); *Malden* v. *MacCormac,* 318 Mass. 729, 732 (1945); *Molinari* v. *Boston,* 333 Mass. 394, 395-396 (1955); *Desmarais* v. *Wachusett Regional Sch. Dist.* 360 Mass. 591, 594 (1971); *Morash & Sons, Inc.* v. *Commonwealth,* 363 Mass. 612, 616-617, 622-623 (1973). The judge's reliance on G. L. c. 44, § 7 (11), for finding the town liable, was surely misplaced.[8] So also the members

---

[5] The judge of the Superior Court inferred from the fact that the Municipal Court allowed some rent increase that the code violations had been cleared up, but, even so, it does not appear with certainty on this record that the other grounds to which the Board referred in its second decision had been removed, so that a rent of $43,351 was necessarily justified. See c. 842, § 7 (b), setting out substantial deterioration and failure to perform repairs as relevant factors in determining whether a rental unit yields a fair net operating income.

[6] The parties were the Board and the tenants (including the Brookline housing authority which happened to be a tenant).

[7] See the recent canvass of this complicated field in *Morash & Sons, Inc.* v. *Commonwealth,* 363 Mass. 612 (1973).

[8] Section 7 (11), as amended by St. 1969, c. 849, § 50, lists as a purpose for which cities and towns may incur debt, as therein specified, "payment of final judgments rendered after the fixing of the tax rate for the current fiscal year for which other provision has not been made."

of the Board would have personal immunity for their conduct under *Gildea* v. *Ellershaw,* 363 Mass. 800, 820 (1973), if they are taken to have acted "in good faith, without malice and without corruption."

We assumed above for argument's sake that the Superior Court — and the same considerations would apply to the Municipal Court[9] — was entitled to redo a rent adjustment case, to hear it de novo, but we think that assumption is not correct. If, as we believe, the courts are ordinarily confined in their review to the record made before the Board, then the decree appealed from was irregular for the further reason that it rested on matters postdating the final Board decision. To analyze this matter we need to look briefly at the process in rent adjustment cases as envisaged by c. 842, commencing with the procedure before a board.

When rent adjustment is sought by a landlord or tenant, the board is required by c. 842, § 8 (a), to furnish an adversary or "trial-type" procedure, with adequate notice and a hearing if requested. Although a rent control board is not an "agency" for purposes of the State Administrative Procedure Act (see G. L. c. 30A, § 1 [2]; *Gentile* v. *Rent Control Bd. of Somerville,* 365 Mass. 343, 349, n. 6 [1974]; *Mayo* v. *Boston Rent Control Admr.* 365 Mass. 575, 576, n. 1 [1974]), the board in a rent adjustment proceeding is required by c. 842, § 8 (d),

---

[9] Under c. 842, § 10 (a), the appropriate District Court has exclusive original jurisdiction of complaints against a board, with appeal, as provided in the case of a civil action in such District Court, to the Superior Court, see *Freedman* v. *Rent Control Admr. of Cambridge,* 1 Mass. App. Ct. 836 (1973), and by G. L. c. 231, § 97, the case "shall be there tried and determined as if originally commenced there."

Within Boston a complaint may alternatively be filed initially in the Housing Court, in which case there is appeal direct to the Appeals Court, without retrial in the Superior Court. See G. L. c. 185A, §§ 3, 24, inserted by St. 1971, c. 843, § 1, with amendments by St. 1973, c. 1114, § 35, and St. 1974, c. 700, § 16; *Commonwealth* v. *Haddad,* 364 Mass. 795, 796-797 (1974).

to follow the procedures of § 11 (1)-(6) of the State Administrative Procedure Act applicable to adjudicatory proceedings before agencies. (Rent boards are expressly exempted from compliance with § 11 (7)-(8), as we shall note below.) Under § 11 (1)-(6), a board need not observe formal rules of evidence (except for the privileges), but the parties are protected in the rights to call, examine, and cross-examine witnesses and introduce other evidence, and to have an official record maintained.

Turning from procedure to substance, a board is guided by c. 842, § 7 (a), which requires that it "assure that rents . . . yield to landlords a fair net operating income," considering under § 7 (b) "among other relevant factors, which the board . . . by regulation may define": changes in property taxes, unavoidable changes in operating and maintenance expenses, capital improvements, changes in space, services, or facilities provided, substantial deterioration not the result of ordinary wear and tear, and failure to perform ordinary repair and maintenance. The statute provides no formula for ascribing relative weights to these factors, although § 7 (c) does allow a board to establish a schedule of standard rental adjustments for improvement or deterioration of specific services and facilities. The setting of maximum rents may indeed be expected to involve a "mathematical" process, but the foregoing shows that there are discretionary elements, to which may be added the discretion allowed a board by § 7 (d) to refuse any rent increase, if there are code violations, or any decrease, if the tenant in certain situations is in arrears of rent.

On the one hand, then, the parties have basic procedural safeguards before a board; on the other hand, substantial discretion is left with a board in deciding on the evidence what rent adjustments are to be allowed. These propositions have a bearing on the kind of judicial review of rent decisions that is appropriate and contemplated by the statute.

Chapter 842, § 10, entitled "Judicial Review," provides that any person aggrieved by an action, regulation, or order of a board may file a "complaint" against it in an appropriate District Court, which may then take such action (with a certain exception) as the Superior Court may take under the Declaratory Judgment Act, G. L. c. 231A. The nearest reference in the latter act is probably to § 2 which permits application of the declaratory procedure to "secure determinations of . . . legal relations under . . . a . . . statute, municipal ordinance or by-law, or administrative regulation, including determination of any question of construction or validity thereof which may be involved in such determination." The question of the propriety of a board's rent decision does not, perhaps, fit patly under this language, but it is near enough to "validity."

Neither in c. 842 nor in the Declaratory Judgment Act do we have express guidance as to the scope of judicial review, and we are remitted, as in other cases, to a judgment based on an appraisal of the total process in its context. So in *Massachusetts Bonding & Ins. Co.* v. *Commissioner of Ins.* 329 Mass. 265, 273 (1952), we held that in the review of the administrative setting of automobile insurance rates, the court was not "authorized to substitute our judgment as to the reasonableness or adequacy of the premium charges for that of the commissioner," and that the court's inquiry only "'embraces questions of law, and, on the factual side, a reëxamination of the proceedings already concluded . . . in order to determine whether . . . [the commissioner's] findings had reasonable support in the evidence,'" quoting from *Insurance Co. of No. America* v. *Commissioner of Ins.* 327 Mass. 745, 753 (1951). Such was the holding although the statute for judicial review (G. L. c. 175, § 113B) nominally extended to "all questions of fact and of law involved" in the commissioner's rate setting decision. Cf. *School Comm. of Boston* v. *Board of Educ.* 363 Mass. 125, 128-129 (1973) (judicial review of State board deter-

minations in the field of racial balance plans). The set-
ting of rents, to be sure, is simpler than the administra-
tive actions involved in the cases just cited. But, as
already intimated, the coincidence of an insistence on
procedural protections in proceedings before the board,
and reliance on the board to exercise informed judgment
and discretion in the award and admeasurement of rent
adjustments, points to the conclusion that the court's
proper role is not to take evidence afresh and decide for
itself what rent is to be fixed, but is rather to decide
whether the board's decision was supported by the facts
before it and was legally justified. See Note, De Novo
Judicial Review of State Administrative Findings, 65
Harv. L. Rev. 1217, 1219-1220 (1952).

We have noted that c. 842, § 8 (d), requires a board to
comply in rent adjustment hearings with the § 11 (1)-(6)
procedures of the State Administrative Procedure Act.
However, it excepts a board from § 11 (7), a rather
elaborate procedure in certain instances for issuing pro-
posed decisions and securing comment from parties there-
on; and from § 11 (8), a requirement that there be a
written decision with a statement of reasons including
determination of the issues of fact or law necessary to the
decision. Very likely the exceptions were intended to
relieve a board of a burden in the many routine cases
where there would be no thought of possible review; we
observe that it was after a complaint was filed in the
Municipal Court that the Board in the present case
amplified its record and assigned reasons. Our comment
in *Assessors of New Braintree* v. *Pioneer Valley Academy,
Inc.* 355 Mass. 610 (1969), may be recalled. We said
that though a case was not subject to the State Adminis-
trative Procedure Act and findings and report were not
required, the Appellate Tax Board was "still . . . subject
to general principles affecting administrative decisions
and judicial review of them," and that "the board, in a
case apparently to be appealed, in order to clarify and
substantiate its decision and to enable this court properly

and justly to decide the issues of law presented to it . . . should find those subsidiary facts upon which it relies." *Id.* at 612, n. 1. See *Dixie's Bar, Inc.* v. *Boston Licensing Bd.* 357 Mass. 699, 702 (1970) ("In general, of course, statements of reasons, even if not required by c. 30A, tend to ensure administrative justice and to encourage public confidence in the administrative process"); *Desmarais* v. *Department of Pub. Util.* 363 Mass. 883 (1973) ("better practice calls for explicit findings of fact by the agency and a statement of reasons for its decision"). The limited judicial review invoked by our present opinion can be most intelligently applied where a board's decision is thus accompanied by the indicated explanation. We would expect that board decisions would usually be accompanied by explanations in rent adjustments destined for the courts; and it would be appropriate for the court to require an explanation in any singular case where a board has not supplied it.[10]

Our conclusion as to limited judicial review in rent adjustment cases is consistent with and, we think, even confirmed implicitly by the different decision we reached in *Gentile* v. *Rent Control Bd. of Somerville,* 365 Mass. 343 (1974), as to the scope of judicial review in eviction cases under c. 842. As pointed out in the *Gentile* opinion, c. 842, § 9, in dealing with evictions does not expressly require any hearing before a board, and surely

---

[10] The limited judicial review does not exclude the court's remanding a case to a board for further hearings and findings where the board record is inadequate. Cf. *School Comm. of Boston* v. *Board of Educ.* 363 Mass. 125, 129 (1973).

Although a court in limited judicial review would ordinarily not take cognizance of occurrences after the relevant board decision, it could in appropriate situations grant interlocutory relief germane to its review of that decision or remand to the board for additional findings, while the board would be free to act under its statutory authority with respect to the later occurrences. Thus there need be no paralysis of needed corrective action. Of course, the best solvent of the problem of maintaining flexibility is speed of decision both by the board and the courts.

does not require an adversary or "trial-type" hearing, nor does it incorporate any of the adjudicatory procedures of the State Administrative Procedure Act. As also indicated in the *Gentile* opinion, a board exercises negligible discretion in dealing with eviction cases. For these reasons de novo consideration of those cases reaching the courts is naturally called for, and in cases of factual dispute may indeed be constitutionally required. On all these scores the opposite holds for proceedings on rent adjustment. It is true that the reference in c. 842, § 10 (a), to the Declaratory Judgment Act applies to both classes of cases, but the functional considerations mentioned lead to different measures of judicial review.[11] And while the two-tier trial — District Court and Superior Court[12] — that is available in both classes may be a more plausible arrangement where judicial review is de novo rather than limited, this is not a decisive interpretive factor, especially as it can be hoped that relatively few cases will survive for appeal to the Superior Court.

*Decree reversed.*

---

[11] Again considerations of simplicity may have been at work in the reference to the Declaratory Judgment Act; compare the more elaborate procedures for judicial review in § 14 of the State Administrative Procedure Act.

In St. 1970, c. 843, a brief, special statute for rent regulation in the town of Brookline not involved here, evictions as well as rent adjustments were brought fully under the State Administrative Procedure Act, both as to procedures before the board and as to the characteristic limited judicial review, but it does not seem possible to argue convincingly from the terms of that special statute to the proper interpretation of c. 842.

[12] Cf. n. 9 above as to the Housing Court.