PETER J. AMARI, trustee, *vs.* RENT CONTROL BOARD OF
CAMBRIDGE & another.[1]

Middlesex. October 18, 1985. — February 12, 1986.

Present: DREBEN, KAPLAN, & WARNER, JJ.

*Rent Control,* Judicial review, Controlled rental unit. *Cambridge. Municipal
Corporations,* Rent control.

In an action under the Cambridge Rent Control Act, St. 1976, c. 36, as in
effect prior to its amendment by St. 1985, c. 399, § 1, by which a
property owner sought judicial review of a determination by the rent
control board of Cambridge that certain premises were a controlled rental
unit, the plaintiff was not entitled to have the board's determination
considered de novo, but rather, review was limited to judicial consider-
ation of whether the board's decision was supported by the facts before
it and was legally justified. [601-602]
A determination by the rent control board of Cambridge that certain premises
had been used as a residence at relevant times and that they were a
controlled rental unit was supported by the evidence before the board's
hearing examiner and was justified under a regulatory scheme which
placed reliance upon the board to exercise informed judgment and dis-
cretion. [602-605]

CIVIL ACTION commenced in the Cambridge Division of the
District Court Department on August 19, 1983.

On appeal to the Superior Court Department the case was
heard by *Joseph S. Mitchell, Jr.,* J., on a motion for summary
judgment.

*Michael J. O'Neill* for the plaintiff.

*Patricia A. Cantor* for Rent Control Board of Cambridge
(*Mark D. Stern,* for Barnett Rubenstein, with her).

WARNER, J. This is an appeal by the owner from a judgment
of the Superior Court which declared that unit 3 at 69 Harvey
Street is a controlled rental unit subject to St. 1976, c. 36, the
Cambridge Rent Control Act (Act).[2]

---

[1] Barnett Rubenstein.

[2] Statute 1970, c. 842, the original rent control act, was extended by St.
1976, c. 36.

On February 12, 1982, Barnett Rubenstein (tenant) filed a tenant's complaint with the rent control board of Cambridge (board), alleging, in substance, that unit 3 was a controlled rental unit, that it had not been properly registered as such, and that as a result Rubenstein had paid subtantially more than the legal maximum rent. The matter was heard by a board hearing examiner, and she concluded that the unit was rent controlled and recommended a legal maximum rent. The board adopted the findings and recommendations of the hearing examiner and ruled that the unit was rent controlled.

The owner of the premises sought judicial review in a District Court in accordance with § 10(a) of the Act.[3] A District Court judge determined, after de novo review, that the unit was rent controlled. The owner appealed to the Superior Court pursuant to G. L. c. 231, § 97, as amended by St. 1977, c. 655, § 2.[4] On the board's motion for summary judgment, a Superior Court judge, without explanation, entered the judgment from which this appeal was taken.

1. *The standard of review in the trial courts*. At the threshold is the question of the proper scope of judicial review of the board's decision. The District Court judge took the position that de novo consideration was called for and conducted the hearing and made his findings accordingly. It is not clear from the record what standard the Superior Court judge applied. The board and the tenant argue that the trial courts' function in cases such as this is not to consider the case anew but only to examine the board's record to determine whether the decision

---

[3] "Any person who is aggrieved by any action, regulation or order of the board may file a complaint against the board in the [Cambridge Division of the District Court]. . . . Said district court shall have exclusive original jurisdiction over such proceedings and shall be authorized to take such action with respect thereto as is provided in the case of the Superior Court under the provisions of chapter two hundred and thirty-one A of the General Laws. . . . All orders, judgments and decrees of said district court may be appealed as provided in the case of a civil action in said district court."

[4] Section 97 provides, in pertinent part, that "[t]he case shall be entered in the superior court . . . and shall there be tried and determined as if originally entered therein."

is supported by evidence before the board and is legally justified. The owner's position is to the contrary.[5]

"Neither in [the Act] nor in the Declaratory Judgment Act do we have express guidance as to the scope of judicial review,[6] and we are remitted, as in other cases, to a judgment based on an appraisal of the total process in its context." *Sherman* v. *Rent Control Bd. of Brookline,* 367 Mass. 1, 9 (1975). It is undisputed that regulations of the board, enacted pursuant to c. 36, § 5(*e*), provided in detail for notice, hearing and adversary or trial-type proceedings on the tenant's complaint. See, *id.* at 7-8. In addition, the regulations required the hearing examiner to submit a written decision to the board containing a

_____

[5] Neither the board nor the tenant advanced in the Superior Court the limited scope of review which they argue on appeal. (The board did make such an argument in the District Court.) In its motion for summary judgment, the board urged the court not to hold a third evidentiary hearing and expressly relied on the board's record and the findings and rulings of the District Court. Whether the standard of review was de novo or limited, the District Court findings, rulings and judgment were entitled to no weight in the Superior Court. See *Zussman* v. *Rent Control Bd. of Brookline,* 371 Mass. 632, 641-642 (1976) (Wilkins, J., concurring); *Niles* v. *Boston Rent Control Admr.,* 6 Mass. App. Ct. 135, 140 (1978). Under the statutory scheme applying to this case (see n.6 below) each court, District and Superior, is charged with making its own independent judgment.

The parties have fully briefed and argued the question of the appropriate standard of review. This case, which began with a tenant's complaint to the board in February, 1982, has been heard by the board and by two courts. Were we to remand for further consideration by the Superior Court, there is a distinct possibility that there would be a further appeal. Even if we were to direct a remand, we would feel obliged to comment on the proper standard of review. The view which we take as to that standard puts us in as good a position as a Superior Court judge to decide the merits of the controversy, and, therefore, we do so. Cf. *McSweeney* v. *Town Manager of Lexington,* 379 Mass. 794, 800 (1980).

[6] Statute 1976, c. 36, § 5, has been amended by St. 1985, c. 399, § 1 (not applicable to these proceedings), by adding to § 5, subsection (*f*), which provides (with exceptions not material) that the provisions of G. L. c. 30A (the State Administrative Procedure Act) relating to adjudicatory hearings shall be applicable to adjudicatory hearings of the board. Further, a new § 10 is inserted in c. 36 by St. 1985, c. 399, § 3, eliminating the two-tier trial and substituting elective appeal to either the District Court (Cambridge Division) or the Superior Court (in Middlesex County). The new § 10 expressly limits judicial review of adjudicatory decisions in accordance with G. L. c. 30A, § 14.

summary of the evidence, findings of fact and recommenda-
tions with reasons supporting them. See *id.* 10-11. The parties
were entitled to oral and written argument to the board. See
*id.* at 8. The owner's argument that since the procedural pro-
tections were not provided in the enabling act the parties were
not entitled to them is to no avail. The regulations enacted by
the board pursuant to a legislative grant of power had the force
of law and were binding on the board. *Niles* v. *Boston Rent
Control Admr.*, 6 Mass. App. Ct. 135, 150 (1978). Cf. *Kenney*
v. *Commissioner of Correction,* 393 Mass. 28, 33 (1984), and
cases cited.

We also think that the board has discretion in determining
whether a rental unit is subject to rent control under the Act.
The term "rental units" is defined broadly.[7] No guidance, other
than by way of specific and limited exceptions, is given in the
Act to assist in applying the definition to particular facts. It
seems apparent, considering the context in which the Act and
its predecessor were enacted and the purposes of both Acts,[8]
that the Legislature intended to leave the case by case determi-
nation of the applicability of rent control in Cambridge to the
existing and developing expertise, judgment and discretion of
the board. While a determination whether a rental unit is resi-
dential in character may be routine in many instances, the facts
of this case show that there are discretionary elements. See
*Sherman* v. *Rent Control Bd. of Brookline,* 367 Mass. at 8.[9]

---

[7] "[A]ny building, structure, or part thereof, or land appurtenant thereto,
or any other real or personal property rented or offered for rent for living
or dwelling purposes, including houses, apartments, rooming or boarding-
house units, and other properties used for living or dwelling purposes,
together with all services connected with the use or occupancy of such
property." St. 1976, c. 36, § 3(*a*).

[8] See St. 1970, c. 842, § 1; St. 1976, c. 36, § 1; *Flynn* v. *Cambridge,*
383 Mass. 152, 156-158 (1981).

[9] The fact that some cases may be routine should not, in our view, require
the sorting out of those cases for a different type of review. As a practical
matter, such a rule would surely lead to inconsistent results and a multitude
of needless appeals. It is the opportunity for the exercise of judgment and
discretion and for the utilization of expertise which point to the proper form
of review.

We hold that the scope of judicial review of the board's decision in this case is limited. "[T]he coincidence of an insistence on procedural protections in proceedings before the board, and reliance on the board to exercise informed judgment and discretion in the . . . [determination whether the unit in question was subject to rent control], points to the conclusion that the court's proper role is not to take evidence afresh and decide [the question] for itself . . . , but is rather to decide whether the board's decision was supported by the facts before it and was legally justified." *Id.* at 10. *Zussman* v. *Rent Control Bd. of Brookline,* 371 Mass. 632, 635 (1976). See *Niles* v. *Boston Rent Control Admr.,* 6 Mass. App. Ct. at 140.[10]

2. *The decision that unit 3 was a controlled rental unit.* The board adopted the findings and recommendations of the hearing examiner, and so we look to see if those findings are supported by the evidence and whether the decision was legally justified. The question before the examiner was whether unit 3 at 69 Harvey Street was a controlled rental unit under the Act. The resolution of that issue depended, in part, on whether the unit

---

[10] In conducting a de novo hearing, the District Court judge expressly relied on *Gentile* v. *Rent Control Bd. of Somerville,* 365 Mass. 343 (1974), *Mayo* v. *Boston Rent Control Admr.,* 365 Mass. 575 (1974), and *Tosi* v. *Boston Rent Control Bd.,* 13 Mass. App. Ct. 921 (1982). The owner likewise argues that these cases required de novo review in this case. *Gentile* and *Mayo,* both eviction cases, are inapposite. As the court noted in *Sherman,* 367 Mass. at 11-12: "Our conclusion as to limited judicial review in rent adjustment cases is consistent with and, we think, even confirmed implicitly by the different decision we reached in [*Gentile*], as to the scope of review in eviction cases under c. 842. As pointed out in the *Gentile* opinion, c. 842, § 9, in dealing with evictions does not expressly require any hearing before a board, and surely does not require an adversary or 'trial-type' hearing. . . . As also indicated in the *Gentile* opinion, a board exercises negligible discretion in dealing with eviction cases. For these reasons de novo consideration of those cases reaching the courts is naturally called for, and in cases of factual dispute may indeed be constitutionally required." See *Mayo, supra* at 576 n.1. In *Tosi,* a case involving a petition for rent control exemption, the parties conceded at trial that the standard of review was de novo. In any event, the case was decided by the board and the court on documentary evidence alone.

In light of our determination as to the limited scope of review, it is unnecessary to consider the owner's contentions with respect to errors in the granting of summary judgment and the denial of a motion for reconsideration of the allowance of the motion for summary judgment in a de novo context.

was used as a residence during the period prior to January 1, 1969, and up to August 10, 1979.[11] It is undisputed that the evidence before the hearing examiner amply supported her finding that unit 3 had been used as a residence continuously (with perhaps hiatuses in early 1967 and in the summer of 1968) from late 1965 to the date of the hearing.

What is controverted by the owner is the examiner's finding that the primary or predominant use of unit 3 had been residential at all relevant times. A sketch of the examiner's uncontested findings will suffice. The unit consisted of one large open room with a single entrance when it was rented in 1965 to an architect who used it as his principal residence, as well as a place where he did some architectural work and woodworking at night. The architect was followed as a tenant by a reporter and free lance writer, then a sculptor, and, finally, Rubenstein, who was a full time art teacher and painter. All of them occupied the space as their principal residence[12] and also did some professional work there during the hours when they were not employed elsewhere. The "vast majority" of the units in the sixteen-unit building (formerly used for a school and located in a predominantly residential area) were devoted to both work and residential uses.[13] Over the years the unit was par-

---

[11] Section 3(b) (2) of the Act exempts "housing units created by conversion from a nonhousing use" on or after January 1, 1969. Until August 10, 1979, removal of rental housing from the market was unregulated. As of August 10, 1979, under an ordinance held valid in *Flynn* v. *Cambridge,* 383 Mass. 152 (1981), a removal permit granted by the board was necessary in order to remove a rent controlled unit from the rental housing stock. See *id.* at 155-156; *Lamb* v. *Rent Control Bd. of Cambridge,* 17 Mass. App. Ct. 1038 (1984). Thus, questions whether Rubenstein was living elsewhere, or who was living in unit 3 and under what arrangements, at the time of the hearing in the Superior Court on the motion for summary judgment are of no significance.

[12] Implicit in the examiner's findings is a finding that none of the tenants in unit 3 during the relevant times had another residence.

[13] The owner claimed that he had no knowledge of the residential use of unit 3 or any other unit. Putting aside the question of relevancy, the examiner found, on persuasive evidence, that the owner knew or should have known of such use. She expressly found that the owner's contrary assertion was not credible.

titioned so as to create two areas; in the smaller area renovations consistent with residential use were made. The examiner found that at the time of the hearings in 1982, Rubenstein had occupied unit 3 as his principal residence since February or March of 1975 and had continuously lived there "on a day-to-day basis." The examiner, who took a view, also found that the larger of the two areas (separated by a partition — with sliding glass doors installed by Rubenstein) was used as a painter's work studio, and the smaller was used as a residence.

The examiner concluded that the primary use of unit 3 was residential because of the day-to-day occupation by tenants who had no other residences. In effect, she determined that whatever professional or business use was made of the unit was incidental to the residential use. The board agreed with the examiner by adopting her findings and recommendations. We conclude that the board's decision that unit 3 was a controlled rental unit under the Act was supported by the evidence and legally justified.

In enacting the Act, the Legislature perceived "a serious public emergency . . . with respect to the housing of a substantial number of the citizens in the City of Cambridge . . . which has resulted in a substantial and increasing shortage of decent rental housing accommodations." St. 1976, c. 36, § 1. See *Flynn* v. *Cambridge*, 383 Mass. 152, 157 (1981). Administration of the Act was entrusted to the board. *Id.* § 5. The definition of "rental units" was broadly stated. See note 7, *supra.* In order that the board may carry out its responsibilities under the Act, "it is only appropriate that some degree of flexibility be accorded to the board in light of the purposes behind c. 36 and the inevitable uncertainty and difficulties that the board is bound to encounter within the rent control field." *H.N. Gorin & Leeder Management Co.* v. *Rent Control Bd. of Cambridge,* 18 Mass. App. Ct. 272, 275 (1984). We are not, of course, bound by the board's conclusion. However, "[t]he importance of an administrative interpretation of a statute is 'never greater than where, as here, . . . [the board] must interpret a legislative policy which is only broadly set out in the governing statute.' " *Consolidated Cigar Corp.* v. *Department of Pub. Health,* 372

Mass. 844, 850 (1977), quoting from *School Comm. of Springfield* v. *Board of Educ.*, 362 Mass. 417, 442 (1972). Cf. *Boston Preservation Alliance Inc.* v. *Secretary of Environmental Affairs*, 396 Mass. 489, 496 (1986). This is especially so where the underlying question involves, essentially, a factual determination to which the knowledge, experience and expertise of the board may be applied. Surely, the importance of those attributes has special significance in the mixed use circumstances presented in this case. We think the construction of the definition of a controlled rental unit as applied to the facts of this case was well within the discretion of the board.[14, 15]

*Judgment affirmed.*

---

[14] In focusing on the primary or predominant use, the examiner expressly referred to *Freedman* v. *Sidrich Realty Corp.*, 333 Mass. 261 (1955). In that case, decided under a 1947 Federal housing and rent act containing a definition of rental housing essentially the same as that in the Act, the court said: "As between the plaintiff and the defendant, as lessee and lessor, where the business and dwelling portions, though rented to a single tenant, are not separable, the premises as an entirety are either subject to control or free from control, depending upon whether the predominant use is for housing accommodations or for business purposes." *Id.* at 263. In her analysis, the examiner was faithful to this standard. The owner would have us read into this common sense test binding relative space and rental value rules prescribed under regulations promulgated under the Federal act. See *United States* v. *DeMary*, 105 F. Supp. 6, 8 (N.D.W.Va. 1952). We decline to do so for the reasons, if no other, that the *Freedman* case does not require such a construction, and we think that it would be inappropriate to require the board to make its determinations on the basis of the wooden application of technical rules which may have little or no relevance (as here) to the ultimate fact question.

[15] There is nothing in the owner's argument that the board should have considered alleged zoning and building code violations. Assuming, without deciding, that such violations might be relevant, we think it dispositive that (1) the examiner concluded (correctly) that there was insufficient evidence of any such transgression, (2) she found that the owner knew or should have known of the use to which unit 3 and other units were being put, see *Freedman* v. *Sidrich Realty Corp.*, *supra* at 263, and (3) she found that no enforcement action had been taken by any responsible authority with respect to any violation.