DAVID T. ZUSSMAN, trustee, *vs.* RENT CONTROL BOARD
OF BROOKLINE & others.[1]

Norfolk.   October 6, 1976. — December 31, 1976.

Present: HENNESSEY, C.J., REARDON, BRAUCHER, KAPLAN, &
WILKINS, JJ.

*Rent Control. Brookline. Municipal Corporations,* Rent control.
*Jurisdiction, Civil,* Review of action by rent control board.   *Admin-
istrative Board.   Due Process of Law,* Rent control.

A landlord who asserted that confiscation of his property resulted from
a decision of a rent control board under St. 1970, c. 842, § 8 (*a*), was
entitled to judicial review of both law and fact but was not entitled
to a trial de novo in the Superior Court. [637-638] WILKINS, J., con-
curring.

A 6.8% rate of return allowed a landlord by a rent control board was
not shown to be confiscatory by the fact that the landlord's financing
of the building's purchase was subject to an interest rate of approxi-
mately 9%. [638-640] WILKINS, J., concurring.

COMPLAINT filed in the Municipal Court of Brookline on October 4, 1973.

On appeal to the Superior Court, the case was heard by *Mitchell, J.*

___
[1] Various tenants of the plaintiff Zussman.

Zussman *v.* Rent Control Board of Brookline.

The Appeals Court reviewed the case and certified it for further appellate review.

*Robert J. Muldoon, Jr.,* for Earl Auerbach & others.

*Andrew E. Bram* for the Rent Control Board of Brookline.

*William F. York* for the plaintiff.

REARDON, J. This case comes to us on certification from the Appeals Court of its opinion in *Zussman* v. *Rent Control Bd. of Brookline,* 4 Mass. App. Ct. 135 (1976).

The facts as stated in that opinion are essentially as follows. The plaintiff, as trustee, owns an apartment complex in Brookline purchased by him in 1972 for $700,000. The purchase was financed with a $700,000 mortgage with an interest rate of approximately 9%. The plaintiff bought the buildings intending to convert them to condominiums. Twenty-six units of the premises are subject to rent control, the provisions of St. 1970, c. 842 (the rent control enabling act), having been accepted by Brookline in 1970.

In May, 1973, the plaintiff filed a petition with the rent control board of Brookline (board) seeking increases in the maximum rents applicable to the rent controlled units in the complex. This petition dealt with twenty-six units, the remaining five units having been converted to condominiums. After a public hearing the board issued an order allowing the plaintiff a 6.8% rate of return on the total value of the units subject to rent control.[2] A judge of the Municipal Court of Brookline sitting in judicial review affirmed the board's decision, whereupon the plaintiff appealed to the Superior Court. A Superior Court judge found that the rate of return allowed by the board was confiscatory and that a reasonable rate would be 10%. He remanded the case to the board to recompute the allowable rents based on a 10% rate of return on the total value of the twenty-six units as previously computed by the

[2] The board reduced this rate to 6.1% because it found a lack of ordinary maintenance and repair.

board. The board and the tenants, who had been made co-defendants, appealed to the Appeals Court.

The Appeals Court remanded the case to the Superior Court for further proceedings conforming to the scope of judicial review delineated in *Sherman* v. *Rent Control Bd. of Brookline,* 367 Mass. 1 (1975), on the basis that the Superior Court judge had substituted his judgment for that of the board in determining the fair rate of return, thus violating the standard laid down in the *Sherman* case, *supra.* The Appeals Court further opined that on remand the plaintiff had a constitutional right to judicial review of both fact and law with respect to his claim that the rate which the board had set resulted in a confiscation of his property, and the opinion contained an order that the Superior Court hold an evidentiary hearing on this question. *Zussman* v. *Rent Control Bd. of Brookline, supra* at 138-139.

Appearing again before the same judge in the Superior Court, the plaintiff waived the opportunity to present further evidence, and the parties stipulated that the judge should base his reconsideration on the record already before him. The Superior Court judge once more found that 10% was a reasonable rate of return and that the rate set by the board was confiscatory in that it had failed to consider financing costs in determining fair net operating income. The board again was ordered to recompute monthly rents for the affected apartments in the complex to produce a 10% rate of return on the value of those units retroactive to the date of the board's decision.

The case was then returned to the Appeals Court on appeal by the board. The Appeals Court held that the Superior Court on remand had correctly followed the *Sherman* case standard of review, and also that the Superior Court judge was correct in holding a 6.8% rate of return to be confiscatory on the facts of this case. However, the judge also held that there was no evidence to support a finding of a constitutional entitlement to a 10% rate of return even though it was conceivable that that rate might be reasonable given adequate evidence to support it. The

Appeals Court therefore for the second time remanded the case to the Superior Court to determine on the basis of evidence adduced before it "the minimum rate of return (somewhere in the range between 6.8% and 10%) which would reasonably have been expected by a hypothetical purchaser of the 26 rental units who would have been willing to purchase them on the date of the plaintiff's petition to the board for a price equal to the value of those units as already determined by the board." *Zussman* v. *Rent Control Bd. of Brookline, supra* at 143. Upon that determination by the Superior Court judge the case was to be returned to the board for the further determination "of a proper 'fair net operating income' at least equal to the minimum rate determined by the court," with appropriate allocations in the increase of the maximum rents to the several units involved retroactive to the date of the board's original decision. *Id.*

We refer to the language of *Sherman* v. *Rent Control Bd. of Brookline,* 367 Mass. 1, 10 (1975), where we reviewed the rent adjustment process and held that "the coincidence of an insistence on procedural protections in proceedings before the [rent control] board, and reliance on the board to exercise informed judgment and discretion in the award and admeasurement of rent adjustments, points to the conclusion that the [trial] court's proper role is not to take evidence afresh and decide for itself what rent is to be fixed, but is rather to decide whether the board's decision was supported by the facts before it and was legally justified." We reaffirm that decision today and specifically hold that a landlord who asserts that confiscation of his property has resulted from a decision under St. 1970, c. 842, § 8 (*a*), is not entitled to a trial de novo. We do not agree with the language of the Appeals Court in *Zussman* v. *Rent Control Bd. of Brookline, supra* at 138.

The Appeals Court would extend to the field of rent control the doctrine of *Ohio Valley Water Co.* v. *Ben Avon Borough,* 253 U.S. 287 (1920). This we decline to do. The *Ben Avon* doctrine originated as a principle of public utility law, holding that if a utility claims that a rate decision

will result in confiscation of property "the State must provide a fair opportunity for submitting that issue to a judicial tribunal for determination upon its own independent judgment as to both law and facts; otherwise the order is void because in conflict with the due process clause, Fourteenth Amendment." *Id.* at 289.

We have adopted this principle of judicial review in cases involving public utilities, *New England Tel. & Tel. Co.* v. *Department of Pub. Util.*, 327 Mass. 81 (1951); *Lowell Gas Co.* v. *Department of Pub. Util.*, 324 Mass. 80 (1949), and in motor vehicle rate litigation, *Opinion of the Justices*, 251 Mass. 569, 610-611 (1925). Even in these cases, however, there is no *constitutional* requirement that the reviewing court itself *hear* evidence of an alleged confiscation. "[T]here is no constitutional requirement, even in a case involving a claim of confiscation or of other violation of constitutional right, as to the precise method by which the court must review a commission's findings of fact, provided the method is fully adequate to enable the reviewing court to make certain that it has before it all available pertinent evidence on the constitutional issue and provided that, as to that issue, the court is free to act upon its own independent judgment as to both law and fact. *We think it would be constitutional to require that all evidence be first heard and passed upon by the commission and that the reviewing court hear the case on the transcript of that evidence, together with the findings of the commission.* The determination of facts by a court upon a transcript of evidence not taken before it is a method of review by no means unknown to our law. But if this method should be adopted we think it would be necessary (1) to lodge in the reviewing court full authority to see to it that, by remanding to the commission or otherwise, the commission should hear and report all pertinent evidence, and (2) that this authority should extend to new evidence necessary to bring the proof as nearly as reasonably possible down to the date of final decision. The court should have control over the evidence applicable to constitutional issues substantially equivalent to that which it has over evi-

dence heard by a master appointed by it. If these require-
ments are observed we think it would be the duty of the
court, at least in the absence of some obstruction not to be
anticipated, to conform to a statute providing that the
reviewing court should not itself hear evidence" (emphasis
supplied). *Opinion of the Justices*, 328 Mass. 679, 687
(1952).

We are not to be understood as downgrading or under-
estimating the importance of judicial review in the pres-
ervation of constitutional rights. There can be no doubt
that judicial review should be available in this case. The
effect of this opinion is to limit the power of the reviewing
court in substituting its own evidentiary hearing for that
already conducted by the rent control board. We hold that
judicial review of facts in rent control cases does not ex-
tend to the taking of evidence de novo.[3] In reaching this
conclusion we have attached significant importance to the
large number of rent control determinations made each
year in this Commonwealth and to the significant differ-
ence between utilities rate setting and rent control. This
latter point has been well stated recently by the Supreme
Court of New Jersey in *Troy Hills Village* v. *Township
Council of Parsippany-Troy Hills*, 68 N.J. 604, 622 (1975):
"The general procedure for determining just and reason-
able return is familiar to the law of public utilities. . . . To
this extent utilities law may provide some guidance for
our purposes. However, because of fundamental differences
in the nature of the property involved and the purposes of
the regulations, public utility precedents are of only lim-
ited value to the field of rent control. In particular, it
should be noted that constitutional challenges to rent
leveling ordinances are not rate-fixing cases. Courts should
not be concerned with balancing competing interests and
determining what is the 'best' rate level. Rather, their sole
task is to determine the lowest constitutionally permissible

---

[3] As we observed in the *Sherman* case at 11 n.10, "The limited judi-
cial review does not exclude the court's remanding a case to a board
for further hearings and findings where the board record is inadequate."

rate." It will be remembered that in *Marshal House, Inc.*
v. *Rent Control Bd. of Brookline,* 358 Mass. 686, 702-703
(1971), we read the term "fair net operating income," as
it appears in St. 1970, cc. 842 and 843, "to require that
rents be set so as to assure to landlords a reasonable return
on their investment." That remains the governing stan-
dard in this Commonwealth today.

In assessing whether the standard has been met, it was
made clear in *Sherman* v. *Rent Control Bd. of Brookline,*
367 Mass. 1, 10 (1975), that a reviewing court was obliged
"to decide whether the board's decision was supported by
the facts before it and was legally justified." We reiterate,
however, that in rent control cases the power of the review-
ing court does not extend to the taking of evidence de
novo.

On the assumption that this case were to be remanded,
the judge would be limited to the record already made be-
fore the board. We do not find remand warranted, how-
ever, for we rule that despite the expanded hearings be-
low the plaintiff has failed to prove confiscation. He has
enjoyed three opportunities to present evidence in the
trial courts, although he was not properly entitled to them
in light of the *Sherman* case and today's decision. Indeed,
on the third occasion he declined to produce further evi-
dence, and the parties stipulated that the judge should
base his reconsideration on the record already before him.
None of the parties has subsequently alleged the existence
of new evidence which would affect the outcome of this
litigation. Cf. *Sherman* v. *Rent Control Bd. of Brookline,*
*supra* at 11 n.10; *Opinion of the Justices,* 328 Mass. 679,
687 (1952).

The board valued the property at $550,000,[4] while there
was evidence that the plaintiff had actually paid $700,000.[5]

---

[4] The board's figure was 37½% higher than the assessed value of
$400,000. Regulation § 1 (d) of the board allows the board to find a fair
market value in excess of assessed value where "more appropriate to
the circumstances of the case."

[5] $680,000 purchase price plus $20,000 broker's fee.

However, the trial judge found that the figure used by the board "falls within the range of what may be regarded as reasonable under the circumstances of this case," and we are not inclined to dispute this finding. The plaintiff purchased the property with the intention of converting it to condominiums. This factor may have made him willing to pay a higher price for the building.[6] In any case, the protection against confiscatory rates applies only to those who conduct their operations in a reasonably efficient manner. *G & M Employment Serv. Inc.* v. *Commonwealth,* 358 Mass. 430, 438 (1970). *Aetna Cas. & Sur. Co.* v. *Commissioner of Ins.,* 358 Mass. 272, 281 (1970). Where the actual purchase price exceeds the fair market value of the units as apartments, the rent control board would be abdicating its duty if it granted an increase in rates to cover the excess cost.

The trial judge made his finding of confiscation "in light of the large interest factor with which [the plaintiff] is faced and which has in no degree been considered as a cost factor by the Board in determining fair net operating income in this case." This approach was erroneous. Under c. 842 a rent control board is not bound to consider the landlord's financing arrangements in setting rates, and there are sound practical reasons consistent with the intent of that chapter which support the board's policy. The rationale is particularly evident on the facts of this case, where the landlord has chosen to finance 100% of the cost of the building.[7]

The plaintiff's debt service charges clearly would be less if he had undertaken "conservative" financing, which the trial judge found to be 70% of fair market value. They would be even less had he chosen to give a more substan-

---

[6] The property had been previously purchased by Louis Glazer for $600,000 in July, 1971. The plaintiff bought the building from Glazer in September, 1972, at a total cost of $700,000. At the time of the plaintiff's purchase, Glazer was being permitted a 6.8% rate of return on his $600,000 investment.

[7] The $700,000 mortgage covered the purchase price plus broker's fee.

tial down payment from his own funds. The plaintiff's use of 100% financing, whatever the motivation, was fundamentally a business decision within his discretion. Given the express concern of St. 1970, c. 842, § 1, with the "substantial and increasing shortage of rental housing accommodations for families of low and moderate income and abnormally high rents," a landlord's decision to minimize or wholly eliminate his initial capital outlay cannot justify imposing higher rents on his tenants. Nor does it warrant permitting him to collect higher rents than other less heavily financed landlords.

The case is remanded to the Superior Court with instructions to enter a new judgment affirming the decision of the judge of the Municipal Court of Brookline which affirmed the board's decision here challenged.

*So ordered.*

WILKINS, J. (concurring). I agree with the result. There are, however, matters of significance not discussed in the court's opinion.

I read the opinion of the court as saying that (1) a new evidentiary trial is not required at the judicial level, even where confiscation is alleged, (2) a court which hears an appeal in which confiscation is asserted engages in its own analysis of the confiscation claim on the record before the administrative board, and (3) the amount of the mortgage interest obligation payable by the landlord is not an automatic floor in determining the line of confiscation. I agree with these conclusions.

1. The opinion suggests that rent control rate matters fall into a different category from public utility and insurance rate matters and, therefore, the denial of a trial de novo is justified when confiscation is alleged in a rent control case. However, the fact is that a trial de novo is not required constitutionally in any of these various rate appeals. *Opinion of the Justices,* 328 Mass. 679, 687 (1952). See 4 K.C. Davis, Administrative Law § 29.09 (1958). Thus the rule announced today for rent control cases is no

different from that applied under Massachusetts constitutional principles long applicable to appeals in more traditional rate regulatory proceedings (see *Aetna Cas. & Sur. Co.* v. *Commissioner of Ins.,* 358 Mass. 272, 277-278 [1970], and cases cited)[1] and, as we said in *Sherman* v. *Rent Control Bd. of Brookline,* 367 Mass. 1 (1975), applicable to rent control rate appeals where confiscation is not alleged.

2. Although I accept the point made in the opinion concerning the landlord's right under the Massachusetts Constitution to an independent analysis of the facts, the opinion offers little guidance concerning the function of a judge in this situation.

We are presented here, apparently for the first time, with the problem of the role of successive courts in extending judicial review to a rent control board decision which is challenged on grounds of confiscation. The Appeals Court concluded that the finding of confiscation made by the Superior Court judge was not "clearly erroneous" within the meaning of Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974), and the Appeals Court made no independent analysis of the facts to reach its own conclusion on the constitutional point. *Zussman* v. *Rent Control Bd. of Brookline,* 4 Mass. App. Ct. 135, 142 (1976). The Appeals Court did not analyze the evidence to see whether the findings of the judge of the Municipal Court of Brookline, who denied relief, were "clearly erroneous." This problem of the proper handling of successive judicial review of a constitutional challenge to rates has not arisen previously in this Commonwealth because cases in the public utility and insurance rate areas have come to this court directly.

If the court were to decide this issue, I would hope that under the present statute each court would be said to be entitled to its own judgment, unfettered by the views of any court which had previously dealt with the same appeal. Each court is conducting an analysis of the same

---

[1] I put aside, as not involved here, the possibility of a constitutional right to evidentiary hearing as a result of evidence becoming available after the agency determination.

agency record, and there is no reason why the first court's view should be given any special weight. In regular agency appeals, the decision of the first court is entitled to respect but no weight on further appeal. It would be peculiar if appellate courts were compelled to give greater weight to the independent views of the trial judge than the trial judge himself had to extend to the agency presumed to be the qualified expert on the subject in issue.

The court's opinion does not discuss the extent of the duty of a court in making its independent determination of the facts when confiscation is asserted. Our opinions have articulated the principle of de novo review (see, e.g., *Boston Gas Co.* v. *Department of Pub. Utils.*, 368 Mass. 51, 54 [1975], and cases cited)·, but have not stated the limits, if any, on the court's involvement in fact determinations. In my opinion, questions of credibility and the making of subsidiary fact determinations are for the agency alone (assuming substantial evidence to support the agency's conclusions) and are not a part of the constitutional function of a reviewing court. The court's constitutional function extends only to ultimate findings of fact, and to the conclusions to be drawn from the subsidiary facts. Moreover, a person challenging an agency determination on the ground that its decision produces confiscation has a heavy burden of overcoming the presumptive validity of the agency decision. When one recognizes and applies these limitations on the court's constitutional function, the landlord's proof, which I discuss next, fails to demonstrate a case for confiscation.

3. The opinion of the court seems to regard the controversy as resolved when it concludes, correctly in my view, that in this case the landlord's interest obligation does not have to be met by the level of rents allowed by the board. The landlord has argued, however, that if a 9% return on the fair market value of its property is not required constitutionally, there is a level of return which must be allowed in order to avoid a confiscatory return on his investment. The opinion of the court does not consider whether the

facts show that there is confiscation as the result of the agency approved rent level.

If that analysis were made, as I believe it should be, the result reached by the court would be unchanged because the landlord has not proved confiscation. A return of 6.8% was allowed by the board. That return was apparently the return allowed when rent control came into effect and was valid presumptively. On February 1, 1972, the rent control board allowed a rent adjustment based on a return of 6.8%. The landlord has neither proved that the initial return was inappropriate nor that changes have occurred which require an adjustment in that 6.8% return. Consequently, both in making an independent analysis of the ultimate facts and in assessing whether there was substantial evidence to support the rent control board's decision, I conclude that there is no ground for reversing the board's decision.