WARNER CABLE OF MASSACHUSETTS INC. & others[1] *vs.*
COMMUNITY ANTENNA TELEVISION COMMISSION;
MAYOR OF SOMERVILLE, intervener.

Suffolk.    February 9, 1977. — May 4, 1977.

Present: HENNESSEY, C.J., KAPLAN, LIACOS, & ABRAMS, JJ.

*Community Antenna Television Systems.    Due Process of Law,* Rate-
making.    *Jurisdiction, Civil,* Administrative matter.    *Administrative
Matter.    Regulation.*

Under G. L. c. 166A, § 15, determination of rates for licensees of com-
munity antenna television systems was to be made by the Com-
munity Antenna Television Commission in the first instance, not by
the court. [500-502]
Under G. L. c. 166A, § 15, the Community Antenna Television Commis-
sion has the authority both to set rates charged by licensees to sub-
scribers and to determine the rate of return to the licensee. [502-
503]
Regulations of the Community Antenna Television Commission which
required a licensee desiring a change of rates to go first to the is-
suing authority were within the authority granted the Commission
under G. L. c. 166A, § 15. [503-504]
The Community Antenna Television Commission's power under G. L.
c. 166A, § 15, to adopt reasonable regulations encompassed a power
to adopt a regulation that a change of rates would not be effective
until approved by the Commission. [504-505]

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on November 5, 1975.

The case was reserved and reported by *Braucher,* J.

*Walter H. Mayo, III (Hilary S. Schultz* with him) for
the plaintiffs.

*Terence P. O'Malley,* Assistant Attorney General
(*Thomas Miller,* Assistant Attorney General, with him)
for the defendants.

---

[1] Warner-TVC Corp., Warner Cable of Somerville Inc., Warner Cable
of Winthrop Inc., Warner Cable of Medford Inc., and Warner Cable of
Everett Inc. (See n.8 below.)

496 372 Mass. 495

Warner Cable of Mass. Inc. *v*. Community Antenna Television Comm'n.

KAPLAN, J. The plaintiff "Warner" corporations, licensees of community antenna television (CATV) systems, brought an action in the Supreme Judicial Court for the county of Suffolk (county court) against the Community Antenna Television Commission (Commission) to invalidate certain regulations promulgated by the Commission, and to secure an adjudication that they were entitled to rate increases proposed by them. A single justice referred the action to a special master and, upon confirmation of the master's report, a partial summary judgment was entered in effect approving those rate increases. Thereafter a single justice reserved and reported the whole case to the full court for disposition.[2] We hold that the regulations in question were valid, and that the issue of the proposed increases in rates was for the Commission in the first instance and not for the court.

The Commonwealth entered upon the regulation of CATV systems (actually cable systems)[3] by the enactment of St. 1971, c. 1103, effective on November 16, 1971, embodying a new c. 166A of the General Laws. The authority to license the operators of such systems was confirmed in the cities and towns as "issuing authorities,"[4] with oversight and ultimate control of the licensing function in the newly created Commission. G. L. c. 166A, §§ 3-9, 11-14.[5] For a minimum period of three years, the issuing authorities were to determine the rates and charges of their respective licensees, provided that the monthly

---

[2] For greater assurance, the Commission noted an appeal from the partial summary judgment that had been entered.

[3] For purposes of G. L. c. 166A, a CATV system is defined as one employing wires or cables for the redistribution (or origination and distribution) of signals. § 1 (b).

[4] Issuing authority is defined as the city manager of a city having a plan D or E charter, the mayor of any other city, or the board of selectmen of a town. § 1 (d).

[5] A grandfather clause with respect to licenses, appearing in St. 1971, c. 1103, § 4, was considered in *Gillis* v. *Mass. Cablevision, Inc.*, 369 Mass. 526 (1976).

372 Mass. 495                                             497

Warner Cable of Mass. Inc. *v.* Community Antenna Television Comm'n.

charges to subscribers should not in any event exceed $7.[6] During the three-year period the Commission was to study the necessity and desirability of itself undertaking rate regulation under the statute; if it reached an affirmative conclusion, it would proceed with such a program under rules for the purpose to be formulated by it pursuant to the statute. G. L. c. 166A, § 15.

On December 18, 1974, the Commission in a "First Report and Order" announced that it had completed its study and, for reasons which it elaborated, had determined to go ahead with rate regulation. At the same time it published tentative "Procedural Regulations for Determination of Changes in Cable Television Rates and Charges" which, with amendments, took effect on March 1, 1975.[7]

The plaintiffs had been licensed to operate CATV systems in Malden, Chelsea, Somerville, Winthrop, Medford, and Everett.[8] Their charges to subscribers — which, as far as appears, they had themselves voluntarily adopted — were a basic $5 monthly for service to subscriber's first set, and $1 monthly (at three of the cities) or $1.50 monthly (at the others) for each additional set.

Under the March, 1975, regulations of the Commission, a licensee desiring to raise its charges to subscribers must, as a first step, petition the issuing authority, which was to accord a full hearing and render a report within ninety days. If the report was negative, the licensee could, as a second step, apply to the Commission for relief. In that case the Commission was obliged to afford a de novo hearing and to render a decision as soon as practicable.

---

[6] St. 1971, c. 1103, § 2.

[7] Official text filed with the Secretary of State on February 13, 1975, and published on February 14, 1975.

[8] Warner Cable Corp. is the parent corporation of the plaintiff Warner-TVC Corp. (Malden system), which is the parent of the plaintiff Warner Cable of Massachusetts Inc. (Chelsea system). The plaintiffs Warner Cable of Somerville Inc., Warner Cable of Winthrop Inc., Warner Cable of Medford Inc., and Warner Cable of Everett Inc. are wholly owned subsidiaries of Warner Cable of Massachusetts Inc.

The statute provided (§ 15) for judicial review by the Superior Court of all questions of fact and law at the suit of any party claiming to be aggrieved by the Commission's decision.

On February 26, 1975 (anticipating by two days the effective date of the regulations), the plaintiffs petitioned their respective issuing authorities for a 50% increase of the basic monthly charge to $7.50 and for a charge of $2.50 monthly for each additional set. Their petitions were denied. They applied respectively to the Commission on dates between May 16 and August 27, 1975.

Through October, 1975, the Commission had not set a date for the de novo hearing, although the record does indicate that on August 7 there had been a "conference with all parties," and it appears, further, that by the end of October there was internal Commission understanding that the economic situation might well justify interim rate increases for some licensees. On October 31 the plaintiffs applied to the Commission to determine interim rates. But on November 4 they filed their action in the county court praying (among other things) for an injunction, preliminary and final, against interference by the Commission with their charging subscribers at the rates of $7.50 and $2.50 as originally proposed to the issuing authorities.

When the single justice heard the plaintiffs' motion for a preliminary injunction on November 13, the Commission had already held (on November 7) a "prehearing conference" regarding the application for interim rates. The single justice denied the motion, without prejudice to a renewal when the Commission acted, or failed to act promptly, on the interim rates application. On November 21 the plaintiffs renewed their motion. It appeared at the argument on the renewed motion that the Commission on November 25, after hearing, and upon a reasoned decision, had entered an order for interim rates allowing, under bond, a basic monthly charge to subscribers of $6.80 (to commence as of December 1), but not allowing any increase of existing charges for additional sets. The single justice was not prepared to grant interlocutory relief

372 Mass. 495                                                     499

Warner Cable of Mass. Inc. *v.* Community Antenna Television Comm'n.

beyond the interim rates allowed by the Commission, and he accordingly denied the renewed motion.

On December 2 the plaintiffs by leave amended their complaint in the county court to allege that the interim rates allowed by the Commission were confiscatory.[9] At the same time they moved for the appointment of a master, presumably to inquire into the issue of confiscation. Although the Commission had started on the road to a determination of final rates by holding a prehearing conference on December 16, and by issuing formal notice to the parties on January 12, 1976, a single justice on January 20 entered an order referring "the case" to a special master to make findings of fact and report to the county court.

Thereafter two proceedings ran on parallel tracks: the Commission took evidence under the ratemaking provision of its statute and the March, 1975, regulations; the special master took evidence typical of a hearing on rates. Hearings before the Commission ended on March 4, 1976, hearings before the special master on April 13.

On April 2, 1976, the Commission rendered a lengthy analytic decision — joined in by three Commissioners, with a fourth concurring in the result — approving the basic monthly rate of $7.50 proposed by the plaintiffs, but denying any increase in the rates for additional sets. (Receipts from the charges for additional sets have been less than 10% of the total receipts.) Two Commissioners dissented from the increase allowed, each with opinion. Review by the Superior Court of the Commission's decision was sought by the present plaintiffs (July 1, 1976) and, in a cross petition, by the issuing authorities of Malden, Chelsea, Somerville, Medford, and Everett (July 15); both petitions named the Commission as defendant. The cross petitioners have moved to consolidate the peti-

---

[9] We need not describe in detail the complaint as amended or the answers of the defendant Commission and of the mayor of Somerville whose intervention in the action on the side of the defendant was allowed by a single justice.

tions, and the cases are pending in the Superior Court.

It was not until June 30, 1976, that the special master filed his report in the county court action. This did not express a conclusion about rates, but was read by the single justice as justifying not only the $7.50 basic rate but also the raise to $2.50 for additional sets. He allowed the plaintiffs' motion to confirm the special master's report, and on August 6 entered partial summary judgment accordingly. He denied a motion by the Commission to dismiss the complaint and the action based on the grounds (as the Commission put them) that the controversy had become "moot" and that "primary jurisdiction" lay with the Commission.[10]

1. Ratemaking was to be accomplished by the Commission in the first instance under G. L. c. 166A, § 15, and therefore we dispose of one of the matters reserved for us by holding that the reference to the master, with the consequent partial summary judgment, was not appropriate. The statute laid down the procedure for determining applications by licensees for changes of rates: it led from the issuing authority to the Commission and thence to the Superior Court for judicial review — a customary administrative-judicial route. In the present case that path was followed, and in fact judicial review of the administrative decision still awaits the parties in the designated court.

Under *Boston Gas Co.* v. *Department of Pub. Utils.,* 368 Mass. 51, 54 (1975), a court may step in beforehand in an extraordinary situation where a ratemaking agency is depriving a party of procedural due process by delaying inordinately the administrative decision.[11] It can be doubted whether the present case fits that description, as

---

[10] The Commission had previously moved to dismiss at the master's hearing.

[11] In *Boston Gas,* the agency had suspended the operation of interim as well as permanent rates for the maximum period allowed by statute. This was done without hearing and, as to the interim rates, in the face of what was claimed to be "incontrovertible" supporting evidence of costs (*id.* at 52).

372 Mass. 495                                                           501

Warner Cable of Mass. Inc. *v.* Community Antenna Television Comm'n.

the agency acted with due speed in determining interim rates once the plaintiffs moved for them, and it attained to a decision on final rates well before the special master filed his report; it is of no particular significance that the agency may have been impelled to step hard on the accelerator because of the overhanging county court action. In all events, as the *Boston Gas* case itself shows, where procedural due process is offended by administrative delay, the expected result is not for the court to displace the agency as ratemaker, but rather for the court to order the agency to expedite its action.[12] All this can be viewed as a phase of the doctrine of "exhaustion of administrative remedies," or of "primary jurisdiction," as recently discussed in *J. & J. Enterprises, Inc.* v. *Martignetti,* 369 Mass. 535, 539-541 (1976).

The *Boston Gas* case also refers to a doctrine still maintained by this court that there is a judicial duty to make "an independent determination of the facts" when there is a claim of unconstitutional confiscation of a party's property as a result of agency conduct. *Boston Gas* at 54, and cases cited. But this could not justify the court's assuming the ratemaking function by passing the matter to a master and then in effect approving particular rates on the basis of the master's report. As pointed out in *Zussman* v. *Rent Control Bd. of Brookline,* 371 Mass. 632, 636-638, and 640 (Wilkins, J., concurring) (1976), the court's independent determination is to be made on the basis of the record made before the agency; the court is not to try the question on its own.[13] The distinction is real and important.[14] Thus we are brought again to the con-

---

[12] In *Boston Gas,* we said that in the circumstances "the company was constitutionally entitled to a hearing on, or an explanation of, the suspension of its filed interim rates. It is appropriate that such a hearing be held in the first instance by the department," citing *Massachusetts Medical Serv.* v. *Commissioner of Ins.,* 344 Mass. 335, 339 (1962). *Id.* at 56.

[13] *Zussman* was a rent control case in which the landlord claimed that his property was being confiscated by agency action.

[14] Note, for example, that rate hearings by the Commission are "subject to the provisions of chapter thirty A," the State Administrative

clusion that the dispute over rates (here reduced in substance to the question of charges for additional sets) belonged in the Superior Court and was to be settled there on the basis of the record made before the Commission.

2. The plaintiffs attacked the March, 1975, regulations in their effort to validate their proposed rates. Whether that result would follow if the attack succeeded, we need not decide, since the attack fails.

The plaintiffs contend that the regulations have misconstrued G. L. c. 166A, § 15: according to the plaintiffs, § 15, while empowering the Commission to fix rates of return to licensees, did not authorize it to fix charges to subscribers; the latter were to be set by the licensees. The plaintiffs seem not to have insisted on this thought earlier but, however that may be, we think the statutory language — "a fair and reasonable rate of return from subscription rates charged to subscribers, said rates to be adequate, just, reasonable and nondiscriminatory," with the words "said rates" having as their referent "subscription rates" — casts on the Commission responsibilities both for the charges to the public and the returns to the licensees; no matter that these may sometimes pull in opposite directions.[15] This reading of § 15 is confirmed by § 2 of St. 1971,

---

Procedure Act. G. L. c. 166A, § 19. A surface comparison of the master's report herein with the decisions of the Commission on the interim and final rates shows a keener interest of the Commission in the particular, current industrial situation and in future prospects. This might be expected because of the composition of the Commission which includes persons with knowledge of telecommunications. § 2. (In saying this, we imply no judgment that the master was wrong or the Commission necessarily right in their respective opinions.)

[15] Section 15, as amended by St. 1975, c. 674, § 14, provides: "For a period of three years from the effective date of this chapter, the commission shall study the necessity and desirability of rate regulation, and thereafter it may, upon its own motion or upon request of any issuing authority or licensee, after due hearing and investigation, fix and establish, for each community antenna television system in the commonwealth, a fair and reasonable rate of return from subscription rates charged to subscribers, said rates to be adequate, just, reasonable and nondiscriminatory.

". . . .

"The commission may make, and, at any time, alter or amend, rea-

372 Mass. 495                                                 503

Warner Cable of Mass. Inc. *v.* Community Antenna Television Comm'n.

c. 1103, which, speaking of the three-year interregnum, stated that "[u]ntil such time as the ... commission acts to determine rates and charges to subscribers under the provisions of ... [G. L. c. 166A]," the issuing authorities were to make these determinations subject to the $7 ceiling.

Next, it is suggested that, where the regulations require a licensee desiring a change of rates to go first to the issuing authority, they distort a statutory purpose to have the Commission do the whole job of ratemaking itself, or constitute a delegation by the Commission of a nondelega-

---

sonable rules and regulations to facilitate the operation of this section and enforce the application of the rates fixed and established by them, may conduct hearings and investigations under this section and may at any time require any company to file with them such data, statistics, schedules or information as they deem proper or necessary to enable them to fix and establish or secure and maintain fair and reasonable rates. They may issue such orders as they find proper, expedient or necessary to enforce and administer the provisions of this section, to secure compliance with any rules or regulations made thereunder, and to enforce adherence to the rates fixed and established by them. The superior court for the county of Suffolk shall have jurisdiction in equity upon the petition of the commission and, after a summary hearing, to enforce all lawful orders of the commission. Memoranda of all actions, orders, findings and decisions of the commission shall be signed by them and filed in their office as public records open to public inspection.

"Any person or company aggrieved by any action, order, finding, or decision of the commission under this section may, within ninety days from the filing of such memorandum thereof with the commission, file a petition in the superior court for the county of Suffolk for a review of such action, order, finding or decision. An order of notice returnable not later than seven days from the filing of such petition shall forthwith issue and be served upon the commission. Within ten days after the return of said order of notice, the petition shall be assigned for a speedy and summary hearing on the merits. The action, order, finding or decision of the commission shall remain in full force and effect pending the final decision of the court unless the court or a justice thereof, after notice to the commission, shall otherwise order. The court shall have jurisdiction in equity to modify, amend, annul, reverse or affirm such action, order, finding or decision, shall review all questions of fact and of law involved therein and may make any appropriate order or decree. The decision of the court shall be final and conclusive on the parties. The court may make such order as to costs as it deems equitable. The court shall make such rules or orders as it deems proper to secure prompt and speedy hearings and to expedite final decisions thereon."

ble duty. There is, to be sure, no statutory provision expressly commanding or authorizing a two-step procedure; but the Commission is given broad power to "make ... reasonable rules and regulations to facilitate the operation of this section [§ 15] and enforce the application of the rates fixed and established by them," and the procedure adopted is not shown to transgress the statute.[16] Use of the issuing authorities at the first stage could appeal to reason considering, on the one hand, the continuing intimate involvement of the municipalities in the licensing of CATV operators, and, on the other, the evident need of a part-time commission[17] with budgetary problems to get help from others especially during the start-up of rate regulation under § 15. There was, however, no relinquishment of control or abnegation of duty by the Commission, as the regulations not only call for a hearing de novo when the licensee disagrees with the report of the issuing authority, but oblige the Commission to review and to approve or disapprove a report by the issuing authority even where the licensee acquiesces in it.

Lastly, the plaintiffs protest the regulations so far as they state that a change of rates shall not go into effect until approved by the Commission. This is inconsistent, so the argument runs, with the alleged general practice in public utility ratemaking, under which a rate change announced by a company becomes effective unless the agency takes steps to suspend it; and G. L. c. 166A, although silent on the point, should be understood to enact this practice and no other. There is some irony here because for other purposes the plaintiffs resist any imputation that they are public utilities. We need not dilate on the argument. The Commission's power to adopt reasonable regulations encompasses a power to adopt the ques-

---

[16] Cf. *Cambridge Elec. Light Co.* v. *Department of Pub. Utils.,* 363 Mass. 474, 494 (1973); *Secretary of Environmental Affairs* v. *Massachusetts Port Auth.,* 366 Mass. 755, 774 (1975).

[17] Members of the Commission are compensated at the rate of $30 for each day spent in the performance of their duties. G. L. c. 166A, § 2.

tioned feature as well. An agency may abuse a company by arbitrarily withholding approval of a proposed change of rate, but injury may also be done by arbitrarily suspending a change; in either case the courts can be appealed to within the limits suggested by the present decision following the earlier authorities cited.

The case will be remanded to the single justice for the entry of an appropriate judgment.

*So ordered.*