WORLD WIDE REALTY vs. BOSTON RENT CONTROL
ADMINISTRATOR & others.[1]

Suffolk.    February 14, 1979. — March 30, 1979.

Present: GRANT, ROSE, & DREBEN, JJ.

*Rent Control*, Rent increase, Judicial review, Value of property.

A judge of a Housing Court erred in taking evidence de novo in review-
ing a decision of the Boston rent control administrator. [328]
The Boston rent control administrator did not err in calculating allow-
ances for management fees and rent losses by using as the measure
for those items the existing rents rather than the landlord's re-
quested rents. [328-329]
The Boston rent control administrator did not err in estimating the
heating costs of rental property based on figures received by him
from the landlord's gas company where the landlord provided no
other evidence as to heating costs. [329]
In the circumstances this court would not disturb the method used by
the Boston rent control administrator in calculating the value of
rental property by dividing the total then current rents by three to
obtain a figure called "hypothetical taxes," then dividing that fig-
ure by the Boston tax rate adjusted to obtain a "hypothetical assess-
ment" in dollars, and multiplying that figure by three. [329-332]

CIVIL ACTION commenced in the Housing Court of the
City of Boston on April 1, 1975.

The case was heard by *Garrity*, J.

*Russell F. Fanara*, Assistant Corporation Counsel, for
the Boston Rent Control Administrator.

DREBEN, J. The Boston rent control administrator ap-
peals from a judgment entered in a Housing Court allow-
ing the landlord's entire requested rent increase and re-
versing the decision of the administrator that only a par-
tial rent increase was justified.[2]

---

[1] Interested tenants.

[2] The Housing Court judge allowed an annual increase of $1,920,

In granting the landlord's requests in full, the Housing Court judge found that the increases sought yielded a "fair net operating income," and that the determination of value on which the administrator's adjustment was based was "both irrational and confiscatory." While the judge accepted some of the administrator's decisions as to costs, he rejected others and made his own findings based on additional evidence[3] and his own formulae.

Since the Housing Court judge took "evidence afresh" and decided "what rent is to be fixed," rather than limiting his review to whether the administrator's decision was "supported by the facts" and "legally justified," the judgment below is reversed. *Sherman* v. *Rent Control Bd. of Brookline*, 367 Mass. 1, 10 (1975). "[T]he power of the reviewing court does not extend to the taking of evidence de novo." *Zussman* v. *Rent Control Bd. of Brookline*, 371 Mass. 632, 638 (1976).

We next look at the rent increase awarded by the administrator.[4] The administrator computed the landlord's costs, found that the property was not yielding a fair net operating return, and awarded a rent increase in the amount needed to provide a specified return on the "value" of the property.[5]

---

which would raise total annual rents to $8,880. The administrator's decision allowed a rent increase of $528.

[3] Heating bills provided to the court which had not been submitted to the administrator.

[4] Our analysis of the agency record is independent of the views of the court below. *Zussman* v. *Rent Control Bd. of Brookline*, 371 Mass. at 640-641 (Wilkins, J., concurring). *Greenleaf Fin. Co.* v. *Small Loans Regulatory Bd.*, 377 Mass. 282, 285 n.4 (1979). *Niles* v. *Boston Rent Control Admr.*, 6 Mass. App. Ct. 135, 140-141 (1978).

[5] The administrator adopted the hearing officer's recommendation that 27% of the landlord's request be granted, "20% according to the 7.5% return on value analysis, and an additional 7% to cover the cost of amortization." (There was evidence that the property had a negative cash flow although it was financed in 1960 at a 6.5% interest rate.)

We have no difficulty in accepting the administrator's allowances for management fees and rent losses. The administrator's use of existing rents as the measure for such items is no less rational than the use by the Housing Court judge of requested rents as such measure. Since existing rents may be too low, and requested rents may be too high, both figures are subject to comparable infirmities. Which of the two alternatives, if any, is to be chosen, is a matter within the substantial discretion of the administrator. Cf. *Sherman,* 367 Mass. at 8. Mathematical exactitude is not required.

We also have no difficulty in accepting the administrator's findings as to heating costs which he estimated based on figures received by him from the landlord's gas company. A petitioner proposing a rent increase has the burden of proving his expenses. Implicit in the statutory requirement that rents be adjusted so as to yield efficient[6] landlords a "fair net operating income"[7] is the fundamental requirement that adequate evidence be made available to the administrator. Cf. *Travelers Indem. Co.* v. *Commissioner of Ins.,* 362 Mass. 301, 305 (1972). See also *Zussman,* 371 Mass. at 638; *Palmer* v. *Rent Control Bd. of Brookline, ante* 110, 119 (1979). The landlord cannot complain if the gaps left by his data are only partially closed.

In order to compute a fair rent, the administrator determined a "value" for the property. This is clearly authorized. The pertinent statute, St. 1970, c. 842,[8] has been construed to require "that rents be set so as to assure to landlords a reasonable return on their investment." *Marshal House, Inc.* v. *Rent Control Bd. of Brookline,* 358

---

[6] *Zussman* v. *Rent Control Bd. of Brookline,* 371 Mass. at 639.

[7] St. 1970, c. 842, § 7. See also § 5, which provides in part, "Any person who rents or offers for rent . . . any controlled rental unit may be required to furnish under oath any information required by the . . . administrator, and to produce records . . . ."

[8] As to the present status of rent control in Boston, see St. 1969, c. 797, and St. 1970, c. 863, as well as any Boston rent control ordinances that may be in effect.

Mass. 686, 703 (1971). This standard is somewhat higher than one which requires only that the rate be nonconfiscatory. *Id.* While the term "investment" has not been defined, a return on investment need not mean a return on purchase price, *Zussman* v. *Rent Control Bd. of Brookline,* 371 Mass. at 639, nor need it mean a return on fair market value, *Niles* v. *Boston Rent Control Admr.,* 6 Mass. App. Ct. 135, 147-148 (1978), especially where the figures are inflated.

It is a far simpler task to state what "value" is not than to chart a course for determining what it is. As pointed out by the court in *Troy Hills Village* v. *Township Council of Parsippany—Troy Hills,* 68 N.J. 604, 623-626 (1975),[9] no one method is always suitable, and each has its own problems. For these reasons, another route for the determination of a fair operating return is often taken. In *Niles* v. *Boston Rent Control Admr.,* 6 Mass. App. Ct. at 141-148, we held, under the facts there presented, that a fair return was provided by following a regulation of the administrator which did not require a computation of value. The regulation presumed that 1971 rents yielded a fair operating return, *Niles,* 6 Mass. App. Ct. at 138, 147, and permitted the landlord to pass through to the tenants increases in costs incurred after 1971. While the cost pass-through method yielded a fair return in that case, we recognized the possibility that there may be instances when it does not. *Niles,* 6 Mass. App. Ct. at 147, 149-150. Apparently, this is such a case.

The administrator had little evidence before him. Few figures were provided by the landlord, and his 1971 costs were not substantiated so as to enable the administrator to use the cost pass-through method. The landlord has not appealed, and our examination of the record does not disclose any hint that the landlord suggested any method of valuing the property or that he provided any data as to valuation.[10]

[9] The case contains helpful material including an analysis of numerous methods of valuing property.

[10] In addition to evidence of rents and expenses, the record contains documentary support of the following: the building was acquired in

After hearing evidence that the landlord considered taxes too high and that a tenant thought the building overassessed, the hearing officer calculated value according to the following procedure: 1) he divided the total then current rents by three to obtain a figure called "hypothetical taxes"; 2) he divided "hypothetical taxes" by the Boston tax rate adjusted to obtain a "hypothetical assessment" in dollars; and 3) he then multiplied the "hypothetical assessment" by three.[11] The administrator adopted the figure so computed.[12]

A majority of the panel,[13] in the narrow circumstances of this case, and having in mind the presumptive validity of the agency decision, *Zussman*, 371 Mass. at 642 (Wilkins, J., concurring), do not find the decision irrational. The record shows the paucity of the data supplied by the landlord and does not include any regulations of the administrator.[14]

---

February, 1962, for a purchase price of $42,000; current rents were set in 1968; the assessed value of the property was $16,000; and 1974 taxes were $3,147. There is no transcript of testimony, but notes of the hearing officer state that the landlord testified that attempts to obtain abatements had failed and that, in the absence of an increase in rents, the building would be lost. The notes also report the testimony referred to later in this opinion. We find nothing else in the record that is in any way indicative of "value."

[11] Finding 12 of the administrator's findings reads as follows: "In reviewing the value, and in reviewing the testimony on assessments at the hearing, the hearing officer determined that assessment was not an accurate indicator of value. Therefore, the hearing officer followed the following procedure to ascertain value of $35,400:

a) income ($6,960) $\div$ 3 = hypothetical taxes ($2320)

b) hypothetical taxes $\div$ 196.70 = hypothetical assessment ($11,000)

c) hypothetical assessment $\times$ 3 = value ($35,400)."

[12] The Housing Court judge rejected this figure and found a value of $48,000 by multiplying the assessed value by three.

[13] The writer of this opinion would order the case remanded to the administrator for additional findings to support his ultimate figure of value or, failing such subsidiary findings, for a redetermination of value.

[14] Just as we cannot take judicial notice of municipal ordinances or by-laws, *Stigmatine Fathers, Inc.* v. *Secretary of Admn. & Fin.*, 369

While we are not disturbing the method used by the administrator here in light of the sparse record presented, we do not suggest that it would be appropriate in other factual situations. Inherent in the statutory scheme of St. 1970, c. 842, is the requirement that matters left to the expertise of the administrator be carefully considered by him and that he "exercise informed judgment." *Sherman*, 367 Mass. at 10. This obligation is implicit in § 5(*d*), the provision which permits the administrator to make studies and investigations, gives him subpoena powers and authorizes him to obtain such information as is necessary for promulgating regulations, rules or orders. It is also implicit in § 7, which lists specific factors which the administrator must take into account in making rent adjustments, in the procedural provisions requiring hearings (see §§ 7[*e*], 8[*a*] and 8[*b*]), and in § 5(*c*), which envisions the promulgation of regulations.

The judgment of the Housing Court is reversed and the case remanded to that court for entry of judgment putting into effect the rent adjustment approved by the administrator retroactive to the date of the administrator's first decision[15] of April 10, 1975. *Zussman* v. *Rent Control Bd. of Brookline*, 4 Mass. App. Ct. 135, 143-144 n.14 (1976), reversed on other grounds, 371 Mass. 632 (1976). *Palmer* v. *Rent Control Bd. of Brookline*, *supra* at 119-120.

*So ordered.*

---

Mass. 562, 568 (1976), we cannot take judicial notice of local regulations. As to State regulations, compare *Cohen* v. *Assessors of Boston*, 344 Mass. 268 (1962). The fact that the administrator appended to his brief his purported regulations is insufficient for us to consider them. *Commonwealth* v. *Coward*, *post* 867 (1979).

[15] The administrator's decision of April 10, 1975, which was entered without prejudice, denied any increase on the ground that the landlord had failed to produce substantiating data. The Housing Court judge ordered the requested rent increase but, on motion of the administrator, remanded the action to the agency for new findings. The decision of the administrator on remand recommended the partial rent increase. The decision of the Housing Court judge now on appeal ordered the full increase requested retroactive to April 10, 1975.