178 N.J. Super. 51 (1981)
427 A.2d 1138
WINIFRED MAHONEY AND MARY MELTZER, PLAINTIFFS,
v.
HOBOKEN RENT LEVELING BOARD, CARL KIRSHEN AND MARJORIE KIRSHEN, DEFENDANTS.
Superior Court of New Jersey, Law Division Hudson County.
Decided January 28, 1981.
*53 George B. Campen for plaintiffs (Farmer & Campen, attorneys).
Ross D. London for defendant Hoboken Rent Leveling Board (Lawrence E. Florio, Director and City Attorney, attorney).
Leonard J. Felzenberg for defendants Carl Kirshen and Marjorie Kirshen (Felzenberg & Siegel, attorneys; James L. Bosworth, of counsel).
BILDER, J.S.C.
This is an action in lieu of prerogative writs brought by tenants to review the action of the Hoboken Rent Control Board in granting a hardship increase. Defendant landlords were *54 granted an increase in excess of 200% based upon an application which showed a gross annual income of $9,900,[1] operating expenses of $7,298.38 and interest expenses of $14,406.54. Thus, without consideration of their right to receive a fair return on their investment, see Helmsley v. Fort Lee, 78 N.J. 200, 210 (1978), the landlords had an annual operating deficit of $11,804.92. While a lack of findings leaves the details of the board's conclusion unknown, the final result evidences a substantial acceptance of the landlords' claim. Although generally alleging the board action to be arbitrary, capricious and unreasonable, the true thrust of plaintiff tenants' attack is directed at the claimed interest expense and the board's refusal to consider the reasonable value of the building. Both for the failure to make proper findings and conclusions, and the failure to consider the value of the building, the matter must be remanded.

The Interest Expense
Defendants are the owners of a three-family house in Hoboken which they acquired by purchase on May 15, 1980. At the time of the negotiations for its purchase one of the apartments was owner-occupied and the other two were apparently[2] rented for $200 and $250 a month. The purchase price was $145,000. The seller was obligated to deliver the premises free of all tenants and tenancies. One of the rented apartments was in fact vacated, so that when defendants obtained possession, two apartments were vacant and one was still occupied by tenants, the present plaintiffs. The landlords moved into one apartment, rented the other vacant apartment at an increased rental of *55 $350 and collected rent for the occupied apartment at the existing rate of $200.[3]
On June 6, 1980 defendants filed an application for a hardship increase in the rent of each apartment to $650. The application was made pursuant to § 18:54(G) of the Hoboken ordinance, which, as far as relevant, reads as follows:
In the event that a landlord cannot meet his mortgage payments, operating expenses or does not make a "fair return" on his investment, he may appeal to the Rent Leveling and Stabilization Board for increased rentals.
The requested increases were bottomed on a claim by defendants that they were unable to meet their mortgage payments. They sought a sum sufficient to meet these expenses and to provide them with a "fair return" on their investment.
When defendants purchased the property in May 1980, they paid $25,000 in cash an obtained first and second mortgages totaling $120,000. The first mortgage, apparently obtained from an employer, secured a 25-year $70,000 loan at 13 1/2. The second mortgage, apparently obtained from a relative, secured a 25-year $50,000 loan at 10%. As a result, the 1980 purchase burdened the property with an annual debt service of $15,247.20 of which $14,406.54 was mortgage interest, an expense used by the board in calculating the right to a rent increase. When combined with the operating expenses of $7,298.38 for taxes, water, insurance, utilities and fuel, defendants' costs far exceed their $9,900 income, and all that without reference to a fair return on their $25,000 cash investment which, under the Hoboken ordinance, was calculated to be $2,875 a year.[4]
*56 "It is axiomatic that a rent control ordinance must permit an efficient landlord to realize a `just and reasonable return' on his property." Helmsley v. Fort Lee, supra at 210. Plaintiffs do not claim defendants are not efficient landlords, nor can they effectively do so given the nature and dimensions of the claimed expenses. Plaintiffs' thrust, as noted, is at the debt expense. Plaintiffs contend that the purchase price of May 1980 sale was in large measure a reflection of anticipated income based on increased rentals. At the hearing before the board plaintiffs sought to show that a monthly income of $650 had been projected for each apartment and that this projection had been a substantial factor in defendants' valuation of a purchase price. Plaintiffs claim that defendants paid more than the value of the property, that the sales price was excessively inflated by capitalizing such excessive rents and that they should not be required to subsidize such imprudence. In its decision the board held the fair market value of the property to be irrelevant.
What happens when a building is resold, thus creating new actual interest costs and new actual cash investment criteria? Can the tenants be required to meet these additional costs? Can the owners be deprived of their actual costs  i.e., is a limitation which penalizes their imprudence confiscatory? Can rentals be limited to some efficient operator formula based upon the net operating income?[5]
*57 While the question has not been dealt with directly in New Jersey, prudent investment has been recognized by our Supreme Court, see Helmsley v. Fort Lee, supra at 211, n. 4, and the use of the operating ratio as a standard for defining fair return has been upheld. See id. at 211 and 216-217.[6] By the same token, the use of a value-based criterion in the rent control situation has been rejected. Id. at 215. And one of the reasons for its rejection was a recognition of the circular inflationary process which results from a valuation based upon the capitalization of inflated rentals followed by rent increases based upon the inflated valuation. Id. at 214. Indeed, in Troy Hills v. Parsippany-Troy Hills Tp. Council, 68 N.J. 604 (1975), the court noted the inflationary circuity and suggested that "rent levels may permissibly work hardships on landlords in atypical cases, ... and may preclude persons who have paid inflated purchase prices for buildings from recovering a fair return." Id. at 628.
The notion that tenants may be protected against the consequences of imprudent investment is not unique. It has met with recognition and approval in Massachusetts. Zussman v. Rent Control Bd. of Brookline, 371 Mass. 632, 359 N.E.2d 29 (Sup.Jud. Ct. 1976). And the general theory affording consumers protection against imprudent operation or investment is well recognized in other areas of rate regulation. See, e.g., In re New Jersey Power & Light Co., 9 N.J. 498, 509-510 (1952).
In Zussman, supra, the court said:
... the protection against confiscatory rates applies only to those who conduct their operations in a reasonably efficient manner. Where the actual purchase price exceeds the fair market value of the units as apartments, the rent control board would be abdicating its duty if it granted an increase in rates to cover the excess cost. [371 Mass. at 639, 359 N.E.2d at 33; citations omitted]
And the court went on to hold that the landlord's interest obligation does not have to be met by the level of rents allowed *58 by the board when the excess is created by an excessive purchase price or by the choice of a financing arrangement which results in unusually high interest costs.
... a landlord's decision to minimize or wholly eliminate his initial capital outlay cannot justify imposing higher rents on his tenants. [371 Mass. at 641, 359 N.E.2d at 34]
As Justice Mountain noted in Helmsley v. Fort Lee, supra, "the source of an apartment building's value is its income stream...." Id., 78 N.J. at 214. Here defendants ignored the actual income stream in determining the value  and substituted a larger hypothesized income stream. Now they seek to use the resultant theoretical increased value to raise the rents to create the income stream upon which their value was predicated. This is precisely the circuity which the court warned against in Troy Hills v. Parsippany-Troy Hills Tp. Council, supra, when, in pointing out the difficulties in using fair market value as a basis for setting rents, it said:
Rent control begins with the premise that rents are being unfairly inflated as a result of failure in the free operation of the rental housing market... A standard of valuation which itself incorporates this failure will quickly defeat the purpose of rent control. Thus, valuation based on inflated rents would inevitably and erroneously lead the courts to a conclusion that a regulation which fails to permit such inflated rents is confiscatory. [Id. 68 N.J. at 623]
If the instant rent increase  based upon the increased debt servicing costs created by the capitalization of hypothesized increased rents  is permitted to stand, rent control will thereby be destroyed. As with all expenses claimed in an application for a rent increase, the rent control board has an obligation to consider not only whether the expense in truth exists but whether it is reasonable. Such determinations are inherent in the rent control process  they necessarily flow from the provisions for hearings and findings. Hoboken Ordinance §§ 18:54(F)(G) and 18:55(B). See Troy Hills v. Parsippany-Troy Hills Tp. Council, supra at 627.[7] The rent control board must *59 consider the fair market value of the property to determine if the debt servicing expenses are excessive.

The Need for An Appropriate Record for Review
In reviewing the action of the rent control board, the court is limited to an examination of the record below. Kempner v. Edison Tp., 54 N.J. Super. 408, 417 (App.Div. 1959); see Green Acres of Verona, Inc. v. Verona, 146 N.J. Super. 468, 470 (App.Div. 1977). In this reexamination the court ought not to substitute its discretion for that of the local board, nor does it have the power to do so. Kramer v. Sea Girt Bd. of Adj., 45 N.J. 268, 296 (1965); Ward v. Scott, 16 N.J. 16, 23 (1954). Apart from judicial restraint, the action of the rent control board is presumptively valid and the burden is on the parties to show otherwise. Brandt v. Mt. Holly Tp. Bd. of Adj., 16 N.J. Super. 113, 117 (App.Div. 1951). This can only be done by showing that the action taken by the Board was arbitrary, capricious and unreasonable. Kramer v. Sea Girt Bd. of Adj., supra, 45 N.J. at 296; Ward v. Scott, supra, 16 N.J. at 21.
While the actions of the rent control board are presumed to be correct and will withstand judicial interference in the absence of a showing that they are arbitrary, capricious and unreasonable, see In re Millburn, 110 N.J. Super. 330, 335 (App. Div. 1970), the determination must be capable of standing judicial review. Application of Howard Savings Inst. of Newark, 32 N.J. 29, 52 (1960). It is not sufficient for the board merely to set forth its conclusions; it must articulate the basis for arriving at those ultimate conclusions and make the factual findings upon which that conclusion relies. Ibid.
Where the record below is insufficient to permit proper review, the appropriate action is to remand for a proper hearing. *60 Kotlarich v. Ramsey, 51 N.J. Super. 520, 543 (App.Div. 1958); Yellow Cab Corp. v. Passaic, 124 N.J. Super. 570, 583 (Law Div. 1973). While no particular procedure is required of the rent control board, it must comport with due process. Yellow Cab Corp. v. Passaic, supra at 581.
In this case there is a complete dearth of findings or conclusions. Apart from the ultimate result, the board has been totally silent. As already noted, because of an erroneous ruling as to the relevancy of the value of the property, a remand for rehearing and redetermination on the issue of hardship would be required in any case. However, it should be noted that the record, apart from this error, is deficient in its failure to disclose what determinations were made as to the other elements of the landlords' hardship application or what the basis of those determinations were.
The matter is remanded to the rent control board for further proceedings in accordance with this opinion. Jurisdiction is not retained.
NOTES
[1] The annual income was actually $6,600 but this was adjusted to attribute a hypothetical average rental to an owner-occupied apartment.
[2] While there was a controversy as to whether the plaintiffs' rent was $150 or $200 a month, it would appear that at the time of the hearing plaintiffs conceded the appropriateness of the $200 figure. In any event, the difference has no significance with respect to this opinion.
[3] This yielded them a cash income of $6,600 a year together with the use of the owner-occupied apartment to which plaintiffs attributed a hypothetical rental value of $3,300 a year based upon the average of the leased apartment rents. Thus, defendants' total income in cash or kind was calculated to be $9,900 a year.
[4] "`Fair Return' means the percentage of return on equity in real property investment. Amount of return shall be measured by the net income before depreciation. A `fair' return on the equity investment in real property shall be considered to be six percent (6%) above the maximum passbook demand deposit savings account interest rate available in the municipality...." Hoboken General Ordinance § 18:53(J).
[5] Based on defendants' figures, the net operating income here is about $2,600, which results in an operating ratio of about 74%. If the gross were increased to create an operating ratio of 50% (a 47% rental increase), the net operating income would be increased to $7,300  an amount still substantially less than the annual interest expense of $14,406.54. See discussion in Helmsley v. Fort Lee, supra at 217-218.
[6] Helmsley speaks in terms of "the fraction of gross income comprised by operating profits," id. at 211, but this is the mathematical remainder of and therefore legally synonymous with operating ratio which is defined as "the ratio between operating expenses and total income." Id. at 217, n. 10.
[7] The right of a tenant to complain of an excessive rate of return due to a board's failure to apply the standards required by the ordinance is to be distinguished from the tenant's lack of standing to attack the ordinance itself as allowing an excessive rate of return. See Branch Brook Gardens Tenants Ass'n v. Belleville Rent Leveling Board, 177 N.J. Super. 1 (App.Div. 1981)